No. 30,263.

THE BOARD OF DIRECTORS OF THE FORT SCOTT PUBLIC LIBRARY,
*Appellant,* v. THE CITY OF FORT SCOTT et al., *Appellees.*

(7 P. 2d 533.)

Opinion filed January 30, 1932.

*A. M. Keene,* of Fort Scott, for the appellant.
*John L. Connolly,* of Fort Scott, for the appellees.

The opinion of the court was delivered by

SLOAN, J.: This action is one in ejectment. The defendants prevailed, and the plaintiff appeals.

It is alleged in the petition that the plaintiff is duly organized and existing under and by virtue of the laws of the state of Kansas; that it has a legal estate in and is the owner of lot 1 and the north half of lot 3 in block 123, city of Fort Scott; that it is entitled to the full possession of said real estate, and the defendants unlawfully keep it out of the possession thereof. The answer is a general denial. The case was tried to the court without a jury and the court made findings of fact and conclusions of law, as follows:

"FINDINGS OF FACT.

"1. On April 1, 1902, the city of Fort Scott, at the regular meeting of the city council, adopted a resolution accepting the offer of Andrew Carnegie to donate $18,000 for a free public library, if the city would furnish a site for the building and agree to levy an annual tax sufficient to produce $1,800 for maintenance of such library.

"2. In the resolution of April 1, 1902, the city council designated the lots then known as the city lots at the southeast corner of Second and National avenue as the site for the proposed building and agreed to convey the said lots

to the board of directors of the Fort Scott public library. This resolution also pledged the city to levy an annual tax sufficient to raise $1,800 for the maintenance of a free public library.

"3. The board of directors of the Fort Scott public library then owned lot (5) block (104), now occupied by the fire department and the city owned lot (1) and the north half of lot (3) block (123), where the library building now stands. On November 3, 1903, a joint deed was executed whereby the city conveyed to the board of directors of the Fort Scott public library the lots at Second and National avenue, and the board of directors of the Fort Scott Public Library conveyed to the city its lot on Scott avenue. This deed was never recorded; it was apparently lost and forgotten until a few months ago.

"4. When the library building was constructed there was an oral agreement between the city and the library board that the city might occupy the first floor of the building, and that part of the building was planned to suit the convenience of the city.

"5. Pursuant to the oral agreement between the city and the library board, whereby the city might occupy the first floor of the library building, the city bought the necessary furniture for these rooms and constructed, at its own expense, a large vault for the city records. Over the vault door was printed the words, 'City Clerk.'

"6. No record was made by the city or by the library board of the oral agreement for the use by the city of the first floor of the library building. The reason no record was made of this agreement was that the Carnegie corporation might learn of the agreement and demand the return of its $18,000 because the building, or that part of it, was being diverted from library purposes.

"7. On June 13, 1927, the plaintiff notified city officials in writing to vacate the library building.

"8. Pursuant to the oral agreement between the city and the library board, the city has continued to occupy the east rooms of the first floor of the library building since its completion in 1902 or 1903.

"9. Some time after the building was completed, the date is not disclosed by the evidence, the board of education was allowed to occupy the west rooms of the first floor of the library building. The board of education moved into the west rooms with the consent of the city and the library board and has continued to use the west rooms of the building to the present time.

"10. In addition to building the vault on the first floor of the library building at its own expense, the city paid the cost of the building in excess of the $18,000 donated by the Carnegie corporation. The cost of the building in excess of the amount donated by the Carnegie corporation is shown by the evidence to have been 'a few hundred dollars.'

"11. The city has contributed to some extent on janitor hire, and redecorating the rooms on the first floor of the building. The amount of these contributions is not shown by the evidence.

"12. The Fort Scott public library is not a corporation nor a partnership, but it is a voluntary association whose directors are appointed by the mayor of the city of Fort Scott. The mayor, by virtue of his office, is also a member of the board of directors.

"Conclusions of Law.

"From the foregoing facts the court makes the following conclusions of law:

"1. The Carnegie corporation never intended that its gift should be diverted from library purposes, to provide quarters for the city government. It has been the settled law of this state, however, since the case of *State v. Stringfellow* (2 Kan. 263), that the plaintiff in an ejectment suit must recover, if at all, upon the strength of his own title and not upon the weakness of the defendant's title.

"2. The library board is seeking relief from an agreement it made with the city, in violation of the spirit of Mr. Carnegie's gift. The Carnegie corporation might question the right of the city to occupy the rooms in question but the library board is not in a position to do so.

"3. A lawsuit can be maintained only by an individual or by a corporation. The plaintiff is not a legal entity and it has no legal capacity to maintain this action (see *Gulier v. Foster*, 110 Kan. 308).

"4. Judgment should be for the defendants for costs." ·

It is the contention of the appellant that the court erred in holding that it had no legal capacity to maintain the action. It is alleged in the petition that the appellant is duly organized and existing under the statute. The answer is an unverified denial. It is therefore admitted that all of the preliminary steps provided by the statute for the creation of a board of directors for the Fort Scott public library have been taken, and that such board of directors is duly constituted and acting under authority of law. (R. S. 60-729.) The board thus constituted has the power to purchase or lease grounds, lease or erect appropriate buildings for the use of the library, appoint a suitable librarian and to remove such appointee, "and in general carry out the spirit and intent of this act, in establishing and maintaining a public library and reading room." (R. S. 12-1204.) The statute does not in express terms say that the board may sue and be sued. We do not think it is necessary that express power be given by the statute to authorize an administrative board to maintain an action in court where such board has the power to own and control property. (*Board of Park Commissioners v. Nashville*, 134 Tenn. 612.) The power to own and control property is nugatory unless the party vested with such power may call upon the courts to protect it in the ownership and use of such property. The board is a creature of the law—a legal entity—on which the statute confers powers and faculties which are of no force or effect unless it may vindicate the rights conferred in the courts. The case of *Grolier Society v. Foster*, 110 Kan. 306, 203 Pac. 920, has no ap-

plication to the instant case. In that case the petition failed to disclose the capacity of the plaintiff to maintain the suit. In this case the petition alleges the capacity of the plaintiff, and the law supplies the power to prosecute the action.

It is further contended by the appellant that the court erred in its conclusion of law that the appellant did not have title to the land paramount to the claim of the appellees. The special findings of fact, together with the evidence, show that negotiations took place between the parties some time prior to November 3, 1903, and it is claimed by the appellees that during the course of such negotiations an oral agreement was made, by the terms of which the city might occupy the first floor of the building, and that the building was planned to suit the convenience of the city. On November 3, 1903, the city executed a deed, by the terms of which it sold and conveyed to the appellant the real estate in question without any reservations of any nature whatsoever. The city, according to the undisputed testimony in the case, appropriated to its use the consideration expressed in the deed. Under such circumstances the appellant was vested with the title to the property, which the statute expressly provides it had the power to receive. The conveyance carried with it the right to the possession and the full use of the property, and hence the appellant established its *prima facie* case and paramount right to the property. Can it be defeated by the oral agreement found by the court? There is no evidence or finding that the use of the property by the city was in violation of any of the terms of the Andrew Carnegie donation or gift, or that the parties in permitting occupancy by the city acted with any fraudulent purpose or intent. The question is, May the deed be modified by an oral agreement made prior to its execution? The law is well settled that the intention of the parties to a deed must be derived from the language of the deed itself, which cannot be impeached except upon equitable grounds of accident, mistake, fraud and the like, none of which appear in this case. (*Pentico v. Hayes,* 75 Kan. 76, 88 Pac. 738; *Miller v. Miller,* 91 Kan. 1, 136 Pac. 953.)

We conclude that the court erred in its conclusions of law, and the judgment is reversed and the court directed to enter judgment in favor of the appellant for the possession of the property and costs of suit.