No. 40,555

D. G. Pelischek, E. B. Johnson, *Appellants*, v. Tony Voshell, Mc-
Pherson Citizens State Bank, a Corporation, *Appellees*.

(313 P. 2d 1105)

Opinion filed August 9, 1957.

*Paul H. Royer, Robert H. Royer* and *James E. Ahearn,* all of Abilene,
were on the briefs for the appellants.

*Evart Mills,* of McPherson, was on the briefs for the appellees.

The opinion of the court was delivered by

Price, J.: This was an action for damages for alleged breach of a
written contract for the sale of a trailer court. Defendant Voshell
filed a cross-petition to recover the balance due on the contract.
Judgment was rendered in his favor, and plaintiffs appeal.

Defendant bank, as escrow agent, was a mere nominal defendant
and did not participate in the trial below. Whenever the word de-
fendant is used it refers to defendant Voshell.

In 1952 a trailer court was constructed south of Salina and was
located about one-half mile east of the Smoky Hill Air Force Base
and close to a watercourse known as Dry Creek. A laundry and
dry cleaning pickup station was operated at the trailer court. On
January 1, 1955, defendant purchased the trailer court and laundry
and dry cleaning pickup station, and a few days later plaintiffs
called on him and attempted to rent or purchase the laundry and
dry cleaning pickup station. Defendant refused to rent or sell that
facility separate and apart from the trailer court. Pursuant to
negotiations between the parties, defendant sold the trailer court,
the laundry and dry cleaning pickup station, and all facilities in
connection therewith, to plaintiffs for the sum of $9,250. The writ-
ten contract of sale specified a down payment of $3,000, a payment

of $500 on July 15, 1955, and a payment of $1,000 every six months thereafter until the total amount, together with interest at six per cent per annum on the unpaid balance, should be paid in full. The contract of sale contained the following provision:

"The Seller warrants and represents that he is the owner of a good and marketable title to all the assets enumerated above, free from all encumbrances; that he has complied with all laws, rules and regulations of the county, state and federal government relating to the above property;"

Plaintiffs went into possession of the property on January 15, 1955, and in connection with the operation of the facilities engaged in a small loan business on the premises by making loans of $5 and $10 to personnel at the Air Base on items of clothing which the airmen left with them as security, and for which a charge of ten per cent was made on each loan. This operation was stopped by a directive from the county attorney of Saline County in April, 1955.

At the time the trailer court was constructed a septic tank was installed with an outlet to a 300-foot lateral field lying to the south of the tank. There was another outlet from this tank leading to an abandoned four-inch gas line which in turn ran to the west and under Dry Creek. At some time unknown to the parties, a hole was cut in the top of the gas line at the bottom of Dry Creek, permitting overflow from the east septic tank to run from the tank and to discharge into the creek. In addition, and at a date unknown to the parties, another septic tank had been installed. Its only outlet led directly to the bank of Dry Creek. In March, 1955, a district engineer of the Division of Sanitation of the Kansas State Board of Health visited the trailer camp, and at that time advised plaintiffs that sewage from the camp should not be discharged into Dry Creek. Pursuant to this warning from the health authorities, plaintiffs took steps to remedy the system of sewage disposal, and in so doing incurred considerable expense.

In the fore part of July, 1955, plaintiffs contacted defendant at his office in McPherson and requested a change in the payment system under the contract of sale, explaining to him that they had had extensive expenses in connection with the sewage system, and that they would have to make additional expenditures because of it. They requested that the payment system be changed to a flat $150 per month. At the time of this conversation the $500 payment under the contract was due on July 15th. Defendant agreed to plaintiffs' proposal with respect to payments, and pursuant to this

new agreement plaintiffs paid $150 and accumulated interest on or about July 15th.

On August 22, 1955, plaintiffs again visited with defendant and advised him they had learned that the sewage disposal system at the trailer court was definitely inadequate, and gave him the option of refunding the money paid by them under the contract or of correcting the defects in the disposal system so as to comply with state regulations. Defendant did not accept either of these alternatives.

In September the sewage disposal system was officially inspected by the health authorities, and plaintiffs were notified by letter of its inadequacy and that in its then condition it was maintained in violation of G. S. 1949, 65-164, relating to the discharge of sewage into a creek.

On November 1, 1955, plaintiffs made written demand on defendant for damages for breach of contract. Upon his failure to respond, this action was brought, plaintiffs' theory being that the sale to them of the trailer court with the sewage disposal system as it existed at that time constituted a breach of the provision of the contract of sale, heretofore quoted, which stated that the seller (defendant) had complied with all laws, rules and regulations of the county, state and federal government relating to the property in question.

Defendant's answer, in addition to denying material allegations of the petition, was predicated upon the proposition of waiver and estoppel based on the fact that notwithstanding plaintiffs' knowledge of the claimed inadequacy of the sewage disposal system as early as March, 1955, they nevertheless, in July of that year, sought and procured from defendant a new contract without making any complaint whatsoever to him concerning the same.

Trial was by the court and at the conclusion thereof the court made findings of fact and conclusions of law, the substance of the latter being that plaintiffs were not entitled to recover anything from defendant; that defendant was entitled to judgment against plaintiffs for the sum of $1,181.57 with interest from January 15, 1956, plus $1,000 with interest from July 15, 1956, and for costs, and that the court should retain jurisdiction of the matter until plaintiffs had paid the balance due on the purchase price according to the contract of sale.

Plaintiffs' motion for a new trial being overruled, they have appealed, and specify sixteen alleged errors. Their real complaint, however, concerns six of the court's findings of fact, which are:

"No. 9. In March of 1955 Stanley M. Smith, a district engineer for the Kansas State Board of Health, notified the plaintiffs that he had discovered that sewage from the trailer court was being discharged into Dry Creek just west of the court, and further advised them that sewage from the court should not be discharged in the creek.

"No. 10. During the first part of July, 1955, the plaintiffs called upon the defendant, Tony Voshell, and told him that they had made substantial expenditures about the court and facilities, mentioned specifically some expenditures which they had made in connection with the sewage system, and told the defendant that they would further have to make additional expenditures on account thereof. They further told him that by reason of the expenditures which they had made and would have to make that they would like to change the contract and pay the balance thereof at the rate of $150.00 per month. At that time a $500.00 payment was due on July 15, 1955.

. . . . . . . . . . . .

"No. 14. When the plaintiffs asked the defendant, Tony Voshell, to modify the contract so that they would not have to pay the $500.00 due on July 15, 1955, they were then under duty and obligation to reveal to the defendant any claimed violation of the contract. At that time plaintiffs had received notice from the State Board of Health that they should not discharge sewage into Dry Creek. The defendant, Tony Voshell, would not have consented to the modification of the contract had he known that plaintiffs were going to claim any violation of the contract on the part of Tony Voshell, and he was misled to his prejudice.

"No. 15. In March, 1955, plaintiffs received such notice from the State Board of Health concerning its disapproval of the discharge of sewage, that they were then put on notice and were presumed to know all matters of which they later complained.

"No. 16. The plaintiffs waived their rights to claim any breach of contract by reason of the alleged discharge of sewage into Dry Creek and are estopped to assert any breach of contract on account of any alleged discharge of sewage into Dry Creek.

"No. 17. No breach of contract by the defendant, Tony Voshell, was proven."

It is argued that finding No. 9 is directly contrary to the evidence insofar as it purports to state that the district engineer had discovered sewage from the trailer court being discharged into Dry Creek in March, 1955.

We find no merit to this contention. The record contains direct evidence that in March, 1955, plaintiffs were notified and advised that sewage from the trailer court must not be discharged into the creek.

It is contended that finding No. 10 is erroneous and contrary to the evidence insofar as it finds that plaintiffs told defendant they would have to make further expenditures on account of the inade-

quacy of the sewage disposal system, and insofar as it finds that at the time of the July visit the $500 payment was due according to the terms of the contract.

This contention is likewise without merit. The record contains direct evidence to the effect that when plaintiffs contacted defendant in the early part of July, 1955, about a change in the method of payment they told defendant they had been to considerable expense and would have additional expenses in connection with the sewage disposal facilities. Further, by the very terms of the written contract, defendants were obligated to make a $500 payment on July 15, 1955.

Next it is contended that finding No. 14 is erroneous, but, assuming it to be correct, is in the nature of a conclusion of law rather than a finding of fact, and that such portion of it as states that defendant was misled to his prejudice is directly contrary to the evidence.

Again, we are unable to agree with plaintiffs' contention. They had received notice in March of the inadequacy of the sewage disposal system, and if in July, when they sought a revision of the payment plan, they were claiming any breach by defendant they were duty bound to advise him of such fact at that time. Defendant testified that they were silent concerning any alleged breach and that he would not have consented to the change in payments had he known they were asserting any claim against him. As a practical matter, he waived his right to the $500 payment which was due him on July 15th and received only the $150 payment and accrued interest in lieu thereof. It may not be said that he was not misled to his prejudice.

Complaint is made that finding No. 15 is contrary to the evidence and is based upon a presumption that plaintiffs were supposed to know all matters of which they later complained concerning the sewage disposal system.

What has been said with respect to finding No. 9 applies to this contention. From the record there can be no doubt but that in March plaintiffs were advised by the district engineer of the inadequacy and insufficiency of the sewage disposal system and were put on notice.

Finally, it is contended that finding No. 16 is erroneous in that the elements of waiver or estoppel have no basis in the evidence, and that findings Nos. 16 and 17 are inconsistent with each other.

This contention apparently is based upon the proposition that if finding No. 17 is correct, that is, if no breach of contract by defendant was proved, the matter of waiver or estoppel is immaterial and does not enter into the lawsuit. It does not follow, however, that because of this alleged inconsistency the two findings are erroneous and must be set aside. Apparently the trial court was of the opinion that no breach of the warranty had been proved, but, assuming there had been a breach, plaintiffs, by their course of conduct, were estopped from making claim on account thereof.

As we read this record, the question of waiver and estoppel is really the crux of this lawsuit.

Rules applicable to the facts here of record have been stated many times by this court. With respect to estoppel it has been held that in order to constitute an estoppel (1) there must have been a false representation or concealment of material facts; (2) it must have been made with knowledge, actual or constructive, of the facts; (3) the party to whom it was made must have been without knowledge or the means of knowing the real facts; (4) it must have been made with the intention that it should be acted upon, and (5) the party to whom it was made must have relied on or acted upon it to his prejudice. (*Peterson v. City of Parsons,* 139 Kan. 701, 708, 33 P. 2d 715; *Cox v. Watkins,* 149 Kan. 209, 213, 87 P. 2d 243; *Wichita Federal Savings & Loan Ass'n v. Jones,* 155 Kan. 821, 824, 130 P. 2d 556, and *Marett v. World Fire & Marine Ins. Co.,* 160 Kan. 125, 160 P. 2d 664.)

Tested by the foregoing rule, we think there can be no doubt but that by their acts and conduct plaintiffs were estopped from later claiming a breach of contract because of the sewage disposal system. As early as March, 1955, they had knowledge of its inadequacy. In July they sought a new contract from defendant with respect to payments. If at that time they had any complaint they concealed the fact from defendant. He knew nothing of any dissatisfaction on their part, and, relying upon their apparent satisfaction that he had fully complied with the written contract, consented to a change in the contract as to time and amount of payments. This operated as a benefit to plaintiffs and a detriment to him. Under all of the circumstances shown by this record, and assuming, for the sake of argument, the sewage disposal system was legally insufficient and inadequate and did not comply with pertinent statutes and regulations on the subject, and that such fact

constituted a breach of the provision of the contract, plaintiffs waived their right later to complain.

We have searched this record and find nothing erroneous with the findings or the judgment rendered. The judgment is therefore affirmed.

SCHROEDER, J., not participating.