McROBIE *v.* THE MAYOR AND COMMISSIONERS
OF WESTERNPORT, MARYLAND ET AL.

[No. 213, September Term, 1970.]

*Decided January 18, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Louis A. Fatkin* and *John M. Robb* for appellant.

*Lee C. Barnett* and *Gorman E. Getty* for appellees.

DIGGES, J., delivered the opinion of the Court.

We receive this appeal from the Circuit Court for Allegany County (Naughton, J.) upon the dismissal of a bill of complaint which sought to void a sale of land by the town of Westernport on the grounds that it was ultra vires and otherwise illegal. The appellant, Russell R. McRobie, a local taxpayer, brought this action against the town's mayor and commissioners as well as against the Hiram Lodge No. 103, A.F. & A.M., the purchaser.

The seeds of this controversy were sown in March of 1965 when the mayor and commissioners of Westernport (incorporated in 1886) bought property on Main Street, near the town hall, for a parking lot or firehouse. The total frontage of this land was 98.94 feet. The entire tract, having been blacktopped and equipped with parking meters, was utilized as a municipal parking facility until 1968. However, in October of that year the Allegany County Board of Library Trustees received by deed 70 feet of the property, upon which a public library was

later constructed. The remaining 28.94 foot portion was still being maintained for off-street parking at the time of trial. In April 1969, the mayor and commissioners sold the balance of the property for $9,200 to the Hiram Lodge which planned to build a combination post office-meeting hall on this and an adjoining site. The appellant claims that without special legislative approval the town was not authorized to sell real estate such as this, which had been acquired, used and held for a public purpose.

Westernport, as a municipal corporation, possesses only limited powers. In *Montgomery Co. v. Met. District*, 202 Md. 293, 304, 96 A. 2d 353 (1953), this Court, quoting with approval from I Dillon, *Municipal Corporations*, § 237 (5th ed.), said —

> " 'a municipal corporation . . . can exercise the following powers, and no others: First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation,—not simply convenient, but indispensable.' "

It is with these limitations in mind that we must examine the powers given the town officials of Westernport.

The town charter, codified as Art. 1, § 632, of the Public Local Laws of Maryland, provides that Westernport has among its corporate powers the authorization to "purchase and hold real estate and other property or dispose of the same for the use and benefit of the town."[1] While this statutory language would appear to be broad enough to supply the necessary approval for this sale, our prior decisions have clearly indicated otherwise. In *Messer-*

---

[1]. The power of a municipal corporation to buy and sell property contained in Art. 23A, § 2 (24) does not apply, according to § 4 of that article, to towns in Allegany County. Nor has Westernport made any substantial changes in its charter since the adoption of the municipal home rule provision of the Maryland Constitution in 1954 or the implementing legislation in Arts. 23 A and B in 1955.

*smith v. Riverdale,* 223 Md. 323, 327, 164 A. 2d 523 (1960), with an almost identical charter provision, we said: "[t]he powers thus conferred . . . refer only to property in which the town holds absolute title, and not to property it holds as a public trust." This view was re-iterated and expounded in *M. & C. C. v. Chesapeake,* 233 Md. 559, 572, 197 A. 2d 821 (1964), where we stated:

> "It is firmly established that land held by a municipality in its governmental capacity (as opposed to a proprietary or business capacity) and therefore held in trust for the public cannot be disposed of without special statutory authority. . . ."

*Montgomery Co. v. Met. District, supra; Centreville v. Queen Anne's County,* 199 Md. 652, 87 A. 2d 599 (1952); *Worcester Elec. Co. v. Hancock,* 151 Md. 670, 135 A. 832 (1927). This view is in accord with the majority of our sister states as well as authoritative treatises, both of which have observed that property held or maintained in a proprietary capacity may be disposed of unless specifically restrained by charter or statute, while property held in a governmental capacity cannot be disposed of without express authority. 10 McQuillin, *Municipal Corporations* (3rd ed.), §§ 28.37-.38; 2 Yokley, *Municipal Corporations,* § 432.

The town of Westernport did not have express authority either through its charter or through general or public local law to sell land which was used in a governmental capacity. The real controversy in this case, therefore, is whether the property in question was held in a governmental as opposed to a proprietary capacity. We have adopted no strict formula to apply in making such a determination, although we have suggested certain general guidelines to consider.

10 McQuillin, *Municipal Corporations* (3rd ed.), § 28.-38, sets forth a general definition of property which is devoted to governmental use: ". . . all property is public which has been dedicated to public use, or which may

be affected by a public trust, either general or special. Municipal corporations hold all property in which the public is interested, such as streets, alleys, public squares, commons, parks and wharves, in trust for the use of the public. . . ." *Accord, M. & C. C. v. Chesapeake, Messersmith v. Riverdale,* and *Montgomery Co. v. Met. District,* all *supra*. While there have been no cases in Maryland dealing with the issue of whether municipally owned parking lots are held in the exercise of a public function, various authorities have discussed this topic. 7 McQuillin, *Municipal Corporations* (3rd ed.), § 24.647 states:

> ". . . establishment of a parking lot by a city may be a necessary act in the interest of public safety and security in many instances. Indeed, municipal operation of parking lots has a definite bearing on public safety in the use of public streets, and constitutes a lawful exercise of police power. A municipal parking lot, whether or not a charge is made for parking, is owned by a city in its governmental capacity. . . ."

This view was followed in *Stolorow v. City of Pontiac,* 339 Mich. 199, 63 N.W.2d 611 (1954); *Riviere v. Orlando Parking Commission,* 74 So. 2d 694 (Fla. 1954); *Larsen v. City and County of San Francisco,* 313 P. 2d 959 (Cal. 1957). *See also* Annot., 8 A.L.R.2d 373 (1949) and 10 McQuillin, *Municipal Corporations* (3rd ed.), § 28.12. In *Centreville v. Queen Anne's County,* 199 Md. 652, 87 A. 2d 599 (1952), our predecessors held that the installation of parking meters on the street as a means of regulating traffic was an exercise of police power. Though not fully in point, this case is not inconsistent with the principle expressed in the previously cited authorities, that a municipal corporation, in the regulation of parking, exercises its police power.

At this juncture, we are not in disagreement with Judge Naughton, for he correctly enunciated the general principle that a municipal parking lot is held in a governmental capacity and cannot be sold without express

authority. Where he faltered was in making a decision, based primarily on a view of the premises, that this lot no longer served a public purpose. There is authority for the proposition that property no longer used by the public may be disposed of without special or express authority, 10 McQuillin, *Municipal Corporations* (3rd ed.), § 28.38a, and this Court, in *Montgomery Co. v. Met. District, supra,* held that land purchased for a public use, but not in fact so utilized, could similarly be sold. However, these principles are not applicable to the situation in Westernport. Judge Naughton concluded that when the major portion of the lot was conveyed to the county what remained was of insufficient width for parking. He found verification for this observation when he discovered, at the time of his visit, that only five of the twelve available parking spaces were occupied, and then only by people who worked in the vicinity. We conclude that he was clearly in error in determining that these facts did not constitute a public use. Maryland Rule 886.

Parking may have been difficult or awkward, but the dismal fact that we must squeeze larger and larger cars into smaller and smaller spaces does not cancel out the self-evident fact that cars were parked on the lot. Nor can a distinction between people who worked in the vicinity and members of the general public be maintained. Finally, as with the proverbial glass of water, it makes no difference if the lot was a little more than half empty or a little less than half full. The test of public use is not whether the lot is used at all times to capacity but whether it is utilized to a substantial degree. What Judge Naughton saw indicates that the lot met this test. We hold that the land in question was still dedicated to the public use and that its sale by the mayor and commissioners was ultra vires and therefore void.

With this decision there is no reason to discuss the appellant's other argument as to whether the sale was made in a proper manner.

A final point that merits some, though certainly not lengthy mention, is the appellees' feeble reliance on § 649

of the Westernport charter. This section authorizes the town to establish, own and operate municipal parking facilities, and to make rules and regulations necessary to carry out this power. If anything, this places municipal parking lots clearly within the governmental capacity of the town, and we do not think it is implied here that the municipality has the power to dispose of such property without proper legislative sanction. However, we do note that there is some recourse for towns such as Westernport having charters without explicit authority to dispose of property held in a governmental capacity. The solution is to obtain such authority through general legislation enacted by the General Assembly pursuant to Art. XI-E, § 1 of the Maryland Constitution, Code (1957, Vol. 9A, 1963 Repl. Vol.) or through amendment of the town charter under Art. XI-E of the Constitution and its implementing legislation contained in Code (1957, 1966 Repl. Vol.), Art. 23A, §§ 11-18. *Hitchins v. City of Cumberland*, 208 Md. 134, 117 A. 2d 854 (1955). For an example of an appropriate charter provision see Art. 23B, § 22 (47).

> *Decree reversed and case remanded for the passage of a decree in conformity with this opinion. Costs to be paid by the appellees.*