No. 46,041

Lloyd V. Place and Mary Ann Place, *Appellees,* v. A. J. Place, *Appellant,* (LaVon L. Brockelman and Marvin G. Brockelman, Defendants).

(486 P. 2d 1354)

Opinion filed July 16, 1971.

*Howard A. Spies,* of Schroeder, Heeney, Groff and Spies, of Topeka, argued the cause, and *Stephen M. Todd* of the same firm was with him on the brief for the appellant.

*George Forbes,* of Tulsa, Okla., argued the cause, and *Thomas Krueger,* of Emporia, and *Arthur L. Claussen,* of Topeka, were with him on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: The action in district court was one to quiet title to real estate. The principals in the case are father and son. In trial to the court the plaintiff son and his wife prevailed and the defendant father has appealed.

At trial some salient facts were in dispute and others were not fully developed because of loss of recollection of the witnesses. We summarize those pertinent to determination of the controversy as revealed by the record.

The defendant A. J. Place was a successful dairy farmer in the Emporia area. In 1958 his wife of many years, Janis Place, passed away. Prior to this time A. J. had talked to his son Lloyd about conveying his property to him. Lloyd had quit school while in either the tenth or eleventh grade to work on the dairy farm. His father had said he would give him all he had if Lloyd would stay and work on the farm and do as he said. Mr. and Mrs. Place were the parents of four children: The plaintiff Lloyd and three daughters, Wanda, LaVon and Darlene. At the time of his wife's death A. J. was the record owner of three tracts of land in Lyon county consisting of small rental properties in Emporia known as the "town property" and two tracts comprising the Place farm which were known as the "home place" and the "east place". On February 24, 1958, four days after the death of Janis Place, A. J. took Lloyd and his wife Mary Ann to the office of an Emporia attorney where two deeds had been previously prepared at A. J.'s direction. A. J. said he was going to give Lloyd all the property. One deed, dated February 24, 1958, was a warranty deed conveying the three tracts of land from A. J. to Lloyd and Mary Ann. A. J. executed this deed and delivered it to Lloyd with instructions to have it recorded promptly, which instructions were complied with. At the same time Lloyd and his wife signed another deed, dated February 25, 1958, conveying the same property to A. J. The principal factual dispute concerns the events on this occasion. Lloyd testified this second deed with folded and he did not read or examine it but simply

signed where his father directed. In signing instruments he had always relied upon his father. He further testified A. J. said he wanted the paper signed so that he could live on the home place during his lifetime. Lloyd thought the paper was an agreement to this effect. Lloyd's wife, Mary Ann, substantiated this testimony, testifying that after the deeds were signed A. J. stated the property now belonged to Lloyd and her. Lloyd and Mary Ann signed the second paper believing it would allow A. J. to live on the farm the rest of his life. A. J. disputed much of the plaintiff's testimony but admitted execution of the two deeds. His version of the signing of these two instruments was simply "so that I would have protection, and I wanted him to deed the deeds straight back to me so I could put it in my name anytime I wanted to—back again". His memory was faulty with respect to several aspects of the transaction. He testified he had no intention of conveying the property to Lloyd; right after his wife died he was thinking of remarriage.

Later A. J. also procured placement of title to another piece of realty in Lloyd's name, which property is also the subject of this action, being a 120 acre tract known as the "Collins tract". This tract had been previously farmed by the Places and was being purchased in the name of A. J.'s daughter Wanda under a contract of sale; however, all payments on the contract were made by A. J. Wanda had assigned her interest in the contract to Mrs. Janis Place. Upon Janis' death A. J. was appointed administrator of her estate. He obtained disclaimers to the property from all the Place children, paid off the remainder of the contract price and had the seller execute a warranty deed to the property to Lloyd. This deed was executed September 24, 1959. As in the 1958 transaction A. J. at substantially the same time obtained a deed back to him for the Collins land from Lloyd and his wife. Lloyd's deed was promptly recorded—A. J.'s was not. None of the parties had any recollection of events occurring in connection with the signing of these deeds and Lloyd's first awareness he was the owner of this tract came when he noticed the Collins land was listed on his real estate tax notice. However, all parties concede the two deeds were in fact executed as indicated. Lloyd always thought the Collins tract was a part of the Place farm.

A. J. also had a disagreement with two of his daughters following Mrs. Janis Place's death respecting the disposition of the proceeds of certain bonds which had been held in the names of Mrs. Place and the two daughters.

Apparently affairs between A. J. and his son remained amicable for a period of time. Lloyd lived first in the big house on the home place and later in the smaller house with his wife and children. He operated the dairy route, to which he had previously received a bill of sale, and worked on the farm from 1958 to 1962 at which time the dairy route was sold. Thereafter Lloyd continued to work on the farm for short periods of time as well as maintain various jobs in the city of Emporia until he left the farm in 1968. Meanwhile A. J. had entered into a succession of three short-lived marriages, all terminating in divorce. He never told any of these wives he owned any real estate and in at least one of his divorce proceedings swore he owned none.

During the period of amity the farm insurance was changed to show Lloyd as the owner and proceeds arising from insured building losses were paid to him; at A. J.'s request Lloyd and Mary Ann executed an amortization mortgage on the farm realty; a bank account denominated "Place farm account" was opened; Lloyd was the only person authorized to sign checks on this account but A. J. signed Lloyd's name on the checks drawn on it; part of the Place farm was taken in condemnation proceedings; Lloyd hired the attorney and was shown in the pleadings as owner of the farm; Lloyd received the condemnation proceeds which were placed in a time deposit in his name; Lloyd and his wife executed a power line easement on the farm; farming operations were carried on under certain federal feed and grain programs with Lloyd shown in the written applications as the owner and A. J. the operator; between three and four hundred cattle were handled at times; when A. J. was injured while working on the farm he claimed and received workmen's compensation benefits as an employee of Lloyd; in borrowing bank money for farming operations Lloyd and A. J. both were required to submit financial statements but Lloyd was shown as owner of all realty; Lloyd received a nominal monthly salary from the farm income for the small amount of work he did; A. J. had indicated he needed more quarters on his own social security program; A. J. had income tax forms prepared which Lloyd always signed without knowing the contents; some of the returns showed A. J. as Lloyd's employer. Considerable evidence was developed respecting the farming operations but there was no evidence of any actual change in their method after the 1958 deeds were signed. A. J. always collected the rental on the city properties.

In 1954 A. J. had had a large judgment in federal district court entered against him allegedly for an assault upon an employee and as a result of his testimony in the trial of that case he had thereafter been convicted of perjury, subornation of perjury and attempting to corrupt justice.

Eventually relations between A. J. and Lloyd deteriorated, ostensibly because of A. J.'s drinking and his treatment of Lloyd's children, to the point Lloyd moved off the farm. On November 22, 1967, A. J. recorded his two deeds from Lloyd and he also recorded a deed he had made to his daughter LaVon L. Brockelman and her husband Marvin G. Brockelman purportedly conveying all the realty in question to them. At the same time this latter deed was executed by A. J. he had the Brockelmans sign another deed conveying the property to him but A. J. did not record this deed. Lloyd and Mary Ann thereafter filed this suit naming A. J. and the Brockelmans as defendants and embracing title to certain personalty as well as the real estate already mentioned. The Brockelmans filed an answer disclaiming any interest in the property sought by plaintiffs and thereafter upon plaintiffs' application the action was dismissed as to them.

Issues were joined as to A. J. and trial had. The trial court entered the following findings and judgment:

"It is the opinion of the court that it was the intention of the parties that A. J. Place would retain the life use of all the real estate and the complete ownership of all the personal property located on the real estate in question, and that Lloyd V. Place and Mary Ann Place would be the owners of the real property upon the death of A. J. Place. It is also the opinion of the court that A. J. Place, by his conduct, disclaimer of interest and statements under oath that he did not have any interest in said real property, should be estopped to claim any interest in the real estate other than the life use of the same.

"It is the judgment of the court that the defendant, A. J. Place, is declared to be the owner of all the personal property and the life use of all the real property and that plaintiffs are adjudged to be the owners of the remainder interest in all the real estate. . . ."

A. J. has appealed from that portion of the judgment decreeing a remainder interest in the realty in Lloyd and Mary Ann. The latter have not appealed from any part of the judgment.

Appellant makes several contentions. He asserts the trial court erred in not giving full force and effect to appellees' two deeds of reconveyance to him and decreeing him thereby to be the complete fee title owner of the realty. Appellant' position does not take into account a general rule of contract construction. In *Skinner v.*

*Skinner*, 126 Kan. 601, 270 Pac. 594, the litigants substantially contemporaneously executed two contracts conveying ownership of stock first to one party and then back to the other, the initial owner. This court held:

"Where two instruments are executed by the same parties, at or near the same time, in the course of the same transaction, and concerning the same subject matter, they will be read and construed together, although they do not in terms refer to each other." (Syl. ¶ 1.)

Where such instruments are construed together, the general purpose of the entire transaction should control (26 C. J. S., Deeds, § 91a, p. 841).

Another rule coming into play was expressed in *Gaynes v. Wallingford*, 185 Kan. 655, 347 P. 2d 458, in this manner:

"A court of equity once having acquired jurisdiction of a subject matter will reach out and draw into its consideration and determination the entire subject matter and bring before it the parties interested therein, so that a full, complete, effectual and final decree adjusting the rights and equities of all the parties in interest may be entered and enforced." (Syl. ¶ 1.)

Hence the trial court did not err in refusing to give determinative effect to the one instrument to the complete exclusion of the other.

The trial court based its judgment giving appellees a remainder interest in all the realty on two separate grounds—intention of the parties in the execution of the deeds and equitable estoppel. The ruling is attacked and defended on both grounds.

We may quickly dispose of the issue of the propriety of the judgment based upon equitable estoppel. The elements of that doctrine were succinctly stated in *Pelischek v. Voshell*, 181 Kan. 712, 313 P. 2d 1105, as follows:

". . . in order to constitute an estoppel (1) there must have been a false representation or concealment of material facts; (2) it must have been made with knowledge, actual or constructive, of the facts; (3) the party to whom it was made have been without knowledge or the means of knowing the real facts; (4) it must have been made with the intention that it should be acted upon, and (5) the party to whom it was made must have relied on or acted upon it to his prejudice." (p. 717.)

We need not belabor the facts already recited. Obviously, certain essential aspects of this defense are lacking. Suffice it to say appellees never changed their position or acted upon anything done by appellant to their prejudice. The exchange of the deeds caused not a ripple of change in the method of operations respecting the land to appellees' detriment nor any other kind of financial

detriment. The judgment simply cannot be sustained on the basis of estoppel.

We discuss next the property which was the subject of the February 24, 1958, transaction. In effect the trial court found as to this property the parties intended thereby to create a remainder interest in the realty in appellees with the retention of a life estate in appellant. The intention of the parties was a factual issue upon which the trial court received evidence pro and con without objection. It chose to accept appellees' version of the facts in dispute. Appellees claim the remainder estate as a result of a gift and not by way of any contractual arrangement to remain on the farm or to care for appellant. We see no impediment to this claim. Upon appellate review we are not concerned with disputed factual issues but look only to sufficiency of the evidence to support the findings made by the trier of the fact. There was ample evidence to support the theory of a gift upon the February 24th occasion. Likewise appellees' evidence sufficiently supports the finding with respect to the parties' intention. Although the court's finding of a retention of a life interest in appellant was perhaps more generous in his favor than appellees' testimony would have warranted (a life estate in the "town property", the "home place" and the "east place" rather than the right to live in the big house on the "home place") appellees have not appealed from this finding. Moreover, the evidence of the conduct of the parties in handling the Place farm and the town property following these deeds is consistent with the intention found by the trial court. Generally it revealed Lloyd retained the capital while A. J. received the income. Hence the trial court's action in awarding appellees a remainder interest in the realty which was the subject of the February, 1958, transaction must be upheld.

A different question is presented with respect to the "Collins tract". As already stated the trial court's judgment as to it may not be upheld on the ground of estoppel. There was no testimony by anyone concerning the execution of the Collins deeds between the parties in September, 1958. Both deeds were received in evidence. Although appellees were forced to concede their execution of a deed conveying the Collins land back to appellant, neither appellee had any recollection of that event or the circumstances. Lloyd first learned he was the record owner of an interest in the Collins land when that land was listed on his tax notice statement. Consequently we have nothing as to the parties' intention in executing these two

deeds and the trial court's finding on intention may not be upheld because of this evidentiary deficiency. Appellees claim the Collins land also on the basis of a gift. However, this contention ignores the effect of the second deed executed contemporaneously by them. The legal effect of the execution and delivery of the two deeds upon the actual title, standing alone, was they accomplished nothing as between the parties. They, too, constituted parts of a single transaction which left the title where it previously was, in this instance in appellant, who must prevail as to this land.

Consequently the trial court's judgment with respect to the "town property", the "home place" and the "east place" is affirmed; the judgment as to the "Collins tract" is reversed with directions to enter judgment for appellant.

APPROVED BY THE COURT.

FROMME, J., dissenting: I cannot agree with the rationale or the result reached in this case. There was no substantial evidence to support a finding that the intention of the parties was to create a life estate in the father with remainder over to the son. Neither the father nor the son contend this to be their intention. Their testimony was otherwise.

The quiet title action focused on the force and effect of two contemporaneous deeds.

The sons's deed was executed by the father without consideration, delivered to the son and recorded by him. The deed purported on its face to convey fee simple title to the son without reservation.

The deed back to the father was dated and acknowledged before a notary one day later. This deed purported on its face to reconvey fee simple title to the father without reservation. Although it was not recorded until almost ten years later, it was delivered to the father and no rights of third parties are involved in this action. The failure to record does not affect the rights between the parties to a deed.

The father denied any intention of making a gift *inter vivos* of this land to the son. The son claimed the land as a gift but admitted his signature on the father's deed. He claimed that his father represented the deed to be a paper which gave the father the right to live in the big house on the home place.

The rationale of the opinion of the court although based upon contract law completely overlooks the fact that these two deeds

were clear and unambiguous on their face and were dated and acknowledged one day apart. In such case the intention of the parties must be ascertained from the written instruments. (*Oaks v. Hill,* 182 Kan. 501, 322 P. 2d 814; *Board of Library Directors v. City of Fort Scott,* 134 Kan. 586, 7 P. 2d 533.) The bases upon which the language in a deed or deeds can be impeached are mutual mistake of the parties, fraud, misrepresentation and the like. (*Board of Library Directors v. City of Fort Scott,* supra.)

In disposing of the propriety of the judgment based upon equitable estoppel the majority opinion recognizes that certain aspects of that defense are lacking from the evidence. On page 739 of the opinion the court says:

". . . Suffice it to say appellees [the son and his wife] never changed their position or acted upon anything done by appellant [the father] to their prejudice. The exchange of the deeds caused not a ripple of change in the method of operations respecting the land to appellees' detriment nor any other kind of financial detriment. . . ."

This being the case I fail to see how a basis has been established for impeaching the unambiguous deeds. There was no mutual mistake of the parties, and to establish fraud or misrepresentation it is necessary to establish an element of prejudice or detriment to the person who is the victim of the fraud or misrepresentation. This was admittedly lacking, for appellees' claim to the property was based upon a gift *inter vivos* from the father and not by way of any contractual agreement supported by consideration.

In *Pennington v. Tolle,* 99 Kan. 436, 162 Pac. 316, it is said:

". . . False representations as to an estate distinctly reserved in a transfer of property can not be regarded as a fraud upon a purchaser." (p. 438.)

The reasoning in such case being that the purchaser got what he paid for and any representation as to an interest reserved by the grantor and not conveyed for consideration did not act to the purchaser's detriment.

In our present case the son claimed as the donee of the land. He paid no consideration for the gift and suffered no detriment by reason of the claimed misrepresentation that the deed back to the father was only an agreement to allow his father to live in the big house on the home place. In the exchange of deeds he gained nothing but neither did he lose anything nor suffer detriment.

It is impossible for me to understand the rationale of the majority

opinion. It appears to hold the deed back to the father was void and of no effect. It then reforms the deed to the son so as to reserve a life estate in the father and transfers a remainder interest only to the son.

Parol evidence should not have been admitted to vary the terms of these two contemporaneous fee simple deeds. The deed back to the father placed the legal and equitable title in the father. Therefore I respectfully dissent.