FRIENDSHIP HEIGHTS AND THE HILLS, ETC. *v.* FUNGER ET AL.

[No. 295, September Term, 1971.]

*Decided April 11, 1972.*

The cause was argued before HAMMOND, C. J., and FINAN, SINGLEY, SMITH and DIGGES, JJ.

*David N. Webster,* with whom was *Arthur J. Hilland* on the brief, for appellants.

*Stephen J. Orens, Assistant County Attorney,* with whom were *Richard S. McKernon, Acting County At-*

*torney,* and *Rourke J. Sheehan,* on the brief and *John J. Delaney,* with whom were *Linowes & Blocher, Robert H. Levan, Sanford Wool, Norman M. Glasgow, Whayne S. Quin* and *Wilkes & Artis* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Friendship Heights and The Hills (Friendship Heights) are two well defined areas in Montgomery County, lying generally north of the District of Columbia line, west of the Village of Chevy Chase and south of the Town of Somerset. Friendship Heights was constituted "a special tax area or district" by Ch. 131 of the Laws of 1914, which as amended, may now be found in § 66-1 through § 66-12 of the Montgomery County Code (1965). Maryland Code (1957, 1966 Repl. Vol.) Art. 23A, § 9 (a) excludes a special tax area or district which does not exercise general municipal functions from the definition of municipal corporation.

Morton Funger and his associates (Funger), who are developers, see *Funger v. Mayor of Somerset,* 249 Md. 311, 239 A. 2d 748 (1968), own a tract of some 18 acres of land in the southern part of Somerset, contiguous to Friendship Heights. In anticipation of the development of the tract, Funger entered into substantially similar agreements with Somerset and Chevy Chase, the gist of which was that Somerset would support and Chevy Chase would not oppose Funger's application for R-CBD (multiple-family, central business district residential) zoning for the tract, in return for a number of concessions made by Funger. The provisions which are pertinent here, when read together, would limit vehicular ingress to and egress from the tract by way of Wisconsin Avenue on the east and by way of Friendship Heights on the south. The appellants say that this commitment would have the practical result of channeling a substantial portion of the traffic generated by an intensive development of the tract onto the streets of Friendship Heights.

When Friendship Heights learned of this, it concluded

that its interests were being bartered away in return for the concessions which Chevy Chase and Somerset would receive. In an effort to protect what the appellants regarded as their rights, an action for declaratory and injunctive relief was instituted by Friendship Heights Citizens' Committee (the Committee) which described itself as the "Governing Body" of Friendship Heights, in the Circuit Court for Montgomery County against Funger, Somerset, Chevy Chase, the Maryland-National Capital Park and Planning Commission, and the Montgomery County Council (the County Council). The suit sought to have the agreements between Funger, on the one hand, and Somerset and Chevy Chase, on the other; the master plan adopted by Maryland-National Capital Park and Planning Commission and approved by the County Council, and a zoning text amendment enacted by the County Council all declared invalid and unenforceable, and to enjoin the County Council from adopting any zoning map amendment or text amendment based in whole or in part upon the Somerset and Chevy Chase agreements. Alternatively, there was a claim for damages.

Each of the defendants responded to the complaint by filing a motion raising preliminary objection under Maryland Rule 323 a (6)—"lack of legal capacity to sue on part of plaintiff." The court below found that the Committee was not a municipal corporation, had no express power to sue, and dismissed the bill. This appeal followed.

We shall affirm, since we think the bill of complaint was properly dismissed because the Committee lacked the capacity to bring the action. Even if the Committee had the power to sue, the bill of complaint should have been dismissed because of the Committee's failure to exhaust its administrative remedy before seeking declaratory relief.

### Lack of Capacity to Sue

As we have noted, Friendship Heights was constituted a special tax district by the General Assembly in 1914.

Montgomery County Code (1965) § 66-1 describes the area. By § 66-2, the Montgomery County Council is empowered to levy a tax of ten cents on each $100.00 of assessable value, which is to be paid over to the treasurer of the Committee, to be used for:

"* * * opening, improving, widening, maintaining, repairing and lighting the streets, roads, lanes, alleys, sidewalks, parking, drainage, sewerage, sanitation and other village improvements, and for furnishing police and fire protection, clerical and other public service, including the removal of ashes, garbage and other refuse and the disposal thereof."

An additional tax of not more than 30 cents per $100.00 may be imposed by the County Council upon petition of the Committee or upon application by resident taxpayers under § 66-3. The election and removal of members of the Committee are provided for by §§ 66-4 and 66-5. The general powers given the Committee by § 66-9 (a) include only the power,

"* * * to grade, pave, macadamize or otherwise improve any existing dedicated street, road or lane, or any county road, street or lane, within the said special taxing area which has been or which may hereafter be acquired and opened for public use and to lay sidewalks and curbs thereon, and, subject to the approval of the county council of Montgomery County * * *."

and to impose an assessment on the owners of abutting properties under § 66-9 (b) if two-thirds of them consent.

While the Committee is empowered to make certain public improvements, nowhere is it expressly given the power to sue and be sued. It is not vested with any planning or zoning function nor are regulatory powers conferred upon it. It is a special tax district, specifically excluded by Art. 23A, § 9 (a) from the definition of a

municipal corporation, which has an unlimited power to sue and be sued only because it is expressly so empowered by Art. 23A, § 1. We are not to be understood, however, as passing on the question whether the Committee has the power to sue for the breach of a contract to construct a road, which might be implied from the express power which was granted it, *cf. McRobie v. Town of Westernport*, 260 Md. 464, 466, 272 A. 2d 655 (1971) ; *Perry v. Board of Appeals*, 211 Md. 294, 303, 127 A. 2d 507 (1956), or whether it could sue or be sued under Code (1957, 1966 Repl. Vol.) Art. 23, § 138 in an action affecting the tax moneys paid to it.

## *Failure to Exhaust the Administrative Remedy*

It is not alleged that the agreements under attack or that the master plan or zoning text amendment which might allow the zoning reclassification have been implemented by a zoning map amendment, or that Funger's application for a reclassification has been approved by the County Council. If and when an application is considered, Friendship Heights and its residents will have ample opportunity to be heard, as provided by § 70-90 of the Montgomery County Code (1965, as amended by Ch. 177 of the Laws of 1967). In the interim, their position does not rise above that of apprehension, and apprehension is not ordinarily the stuff of which declaratory or injunctive relief is made in zoning matters, where the question may never arise if statutory remedies are followed, *Gingell v. County Commissioners*, 249 Md. 374, 239 A. 2d 903 (1968).

Additionally, in *Hartman v. Prince George's County*, 264 Md. 320, 286 A. 2d 88 (1972), we reiterated the rule of Code (1957, 1971 Repl. Vol.) Art. 31A, § 6 that declarations will not be given where "a statute provides a special form of remedy for a specific type of case" because "that form of remedy must be followed." *See also David W. Chertkof Trust v. Dep't of Natural Resources*, 265 Md. 291, 289 A. 2d 314 (1972) ; *Poe v. Baltimore*

*City,* 241 Md. 303, 216 A. 2d 707 (1966) and *Mayor and City Council v. Seabolt,* 210 Md. 199, 123 A. 2d 207 (1956) which hold that a property owner who has not exhausted his administrative remedies cannot seek a declaration that a regulation or zoning ordinance as applied to his property is invalid.

We are satisfied that the lower court was quite correct when it entered an order declaring that the action could not be maintained.

*Order affirmed, costs to be paid by appellant.*