FRIENDSHIP HEIGHTS CITIZENS COMMITTEE *v.* MILTON A. BARLOW ET AL.

[No. 156, September Term, 1974.]

\* \* \*

FRIENDSHIP HEIGHTS CITIZENS COMMITTEE *v.* SUBURBAN TRUST COMPANY

[No. 157, September Term, 1974.]

*Decided December 16, 1974.*

The cause was argued before ORTH, C. J., and POWERS and MENCHINE, JJ.

*Edward L. Genn* for appellant.

In No. 156, *Paul R. Connolly* for appellee Milton A. Barlow, and *Paul H. Mannes,* with whom were *Stanley Klavan, Kaye Truxton Brooks, D. Warren Donohue, Joseph S. McCarthy* and *McCarthy & Wharton* on the brief, for other appellees.

In No. 157, *John C. Joyce,* with whom were *Duckett, Orem, Christie & Beckett* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Friendship Heights Citizens Committee (Friendship Committee) instituted separate suits at law in the Circuit Court for Montgomery County, seeking damages and declaratory relief against Milton A. Barlow and others [1] (known here as No. 156, September Term, 1974) and against Suburban Trust Company (known here as No. 157, September Term, 1974). All defendants in both cases filed motions raising preliminary objection pursuant to Maryland Rule 323 upon the ground that Friendship Committee lacked legal capacity to sue. The trial court granted the motions and dismissed the actions. Friendship Committee has appealed.

The issue presented for our consideration is extremely

1. The defendants named in the declaration were Milton A. Barlow, Thelma Edwards, Lawrence Myers, Alfred McPhillips, Eleanor Darlington, Margaret Steneck and Arthur O. Dunn.

narrow in scope. We find the legal principles controlling its determination to have application to both cases. We emphasize at the outset that the decision we announce is restricted to Friendship Committee's capacity to sue and we make no finding upon the question whether either action as presently formulated will survive demurrer or other motions as to any or all of the parties defendant.[2] We have not examined the declarations from the viewpoint of their legal sufficiency.[3] We have examined the allegations of the declarations only to determine whether they are such as give rise to a right on the part of Friendship Committee to invoke the aid of judicial power under the circumstances they outline. We find that they do give rise to such right.

The allegations may be summarized as follows:

1. The individual defendants are former elected members of Friendship Committee. The corporate defendant dealt with the individual defendants during their stewardship and engaged in business transactions purporting to bind Friendship Committee.

2. That during the course of their terms of office the individual defendants conspired with each other and with agents of the Suburban Trust Company to borrow money for illegal or unlawful purposes, and did in fact cause notes or other evidences of debt to be executed by Friendship Committee by which it became obligated to Suburban Trust Company for the sum of $1,250,000.00, although the purposes for which said monies were to be used were unlawful, illegal and *ultra vires*.

3. That while occupying such offices the individual defendants continued to conspire with each other

---

2. We so narrowly confine our decision because of the wide powers of amendment and transfer of actions accorded by Maryland Rules 320 and 515.

3. We express no opinion with respect to that question because the issue was not presented to or decided by the trial court. It is not before us. Maryland Rule 1085.

to use, and did in fact use, the major portion of the proceeds of the borrowed money, all with the knowledge and approval of Suburban Trust Company, for the purchase of parcels of land from some of the individual defendants at grossly inflated prices at a time when other land of equal or superior utility was available at lower prices and did conspire to pay, and did in fact pay, to a defendant real estate commissions for such sales.

4. That the loan and deed transactions were illegal and void because they were authorized by less than a majority of the elected members of Friendship Committee.

5. That the loan and deed transactions were illegal and void because such transactions were beyond the power and authority conferred by statute upon Friendship Committee.

6. That profits stemming from the illegal transactions have been retained by the defendants.

7. That during the terms of office of the individual defendants Friendship Committee had upon deposit in the Suburban Trust Company the sum of $300,000.00 upon which it was receiving annual interest at the rate of $7^{1}/_{4}\%$, but that the individual defendants conspired together and with agents of Suburban Trust Company to use the said sum to reduce the principal balance of Friendship's $5^{3}/_{4}\%$ loan, although no principal payment was required to be made until 1975. That the effect of such transaction was to cause Friendship to lose and Suburban to gain $1^{1}/_{2}\%$ per annum on the said monies from the date of actual payment to the date when such payment would have fallen due without any benefit to Friendship Committee.

8. That the advance payment was made shortly before newly elected members of Friendship Committee took office following their election

and was intended to serve their predecessors private purposes and to prevent their successors from effectively functioning in the conduct of the duties committed to Friendship Committee by the Legislature of Maryland, and

9. That the individual defendants, during their terms of office before their successors were elected and qualified, entered into contracts or agreements whereby valuable property rights and easements of Friendship were transferred without legislative authority.

That a public corporation, without express power to sue, may have inherent power to do so in some circumstances is well-established. A leading case on the subject is *City of Toronto v. Bowes*, 4 Grant 489 (Court of Error and Appeal of Upper Canada, 1854). In *Bowes* the Mayor of Toronto secretly planned to deal in a bond issue for the issuance of which he thereafter became an advocate. The Court at 503 declared, "The settled rule is, that he who is entrusted with the business of others cannot be allowed to make such a business an object of interest to himself." Adding at 506:

"The cases are well known in the law books, both of England and Scotland, particularly with regard to the purchasing in of debts, with eases and compositions, and the like, where the law obliges the persons in the particular situation of trust, *in all things relative to the estate of those for whom they are entrusted, to act for them and not for themselves. The reason is, the law will not allow them to act otherwise for the danger of their situation. And another reason may also be assigned namely, that the law in no case will permit persons who have undertaken a character or a charge to change or invert that character by leaving it and acting for themselves, in a business in which their character binds them to act for others.*

\* \* \*

"\* \* \* but it was said that the defendant was the

Mayor of the City of Toronto, and not an agent for the Corporation, and it was strenuously argued that none of the authorities apply to such a case.

"I cannot accede to that argument. Reason and authority are against it. The large estates belonging to the City of Toronto, and the income which they produce; the ample public revenue derived from taxation; all their complicated transactions, pecuniary and otherwise, are under the management of the Common Council. Now it is impossible to deny that these important rights have their corresponding duties. This is in substance and effect a trust. There is no magic in a name. The Common Council is in fact entrusted with the management of the affairs of the city of Toronto, and I am at a loss to discover why the rule applicable to every other case of trust should not be applied to this. If the rule be one of pressing necessity in cases of ordinary trust, why is it to be abrogated where the trusts are of such vast magnitude and importance? Why is the principle to be held inapplicable when the probabilities of an abuse of trust are so greatly multiplied? Such a determination in a country, the local concerns of which are managed to so large an extent by corporations of this sort, possessed of such extensive powers, would be productive, in my opinion, of the worst consequences to the moral and material interests of the community." (Italics in original.)

In Antieau's Municipal Corporation Law, Vol. 2 (1973), it is said in § 15 A.31:

"Where local government officers and employees are themselves recipients of municipal funds improperly disbursed, the law is clear that the public servants must return these funds in a suit brought by the local government or a taxpayer thereof."

In *Jersey City v. Hague*, 115 A. 2d 8 (Supreme Ct. of N. J. 1955), the capacity of Jersey City to sue was questioned but sustained, the Court saying at 15:

"\* \* \* the first count alleges that the defendants as individuals and as public officials 'did steal and did unlawfully, fraudulently, corruptly and with gross breach of trust, extort and appropriate to themselves property of the city, to wit, money.' \* \* \* the city has the power to bring suit for the recovery of its property in the same manner as natural persons, see McQuillin on Municipal Corporations (3rd ed.), § 49.02."

In *City of Lowell v. Massachusetts Bonding and Insurance Company*, 23 N.E.2d 91 (Supreme Judicial Ct. of Mass. 1939), it was said at 92:

"But the plaintiff [City of Lowell] was entitled to have its funds remain in its treasury until lawfully disbursed. It is now entitled to have all unlawful disbursement made good by the disbursing officer and his surety."

In *City of Minneapolis v. Canterbury*, 142 N. W. 812 (S. Ct. Minn. 1913), the City of Minneapolis brought suit against a public official for excessive profits obtained by him from the sale of certain property to the city. The Court sustained the action, saying at 814:

"The question is: Can plaintiff recover the excess? The doctrine of constructive trust arising from abuse of fiduciary relations is too familiar to require exposition. Some consideration of its underlying principles is necessary, however, in order to determine whether it is applicable. No man can serve two masters, and 'the same person cannot act for himself, and at the same time, with respect to the same matter, as agent for another, whose interest might be in conflict with his', nor can he be allowed to profit by his own wrong, even if such be only constructive wrong.

\* \* \*

"The rule applies to officers and agents of municipal corporations. * * * And in such application it is reinforced by the gravest considerations of public policy." (Citations omitted.)

The Court added at 815:

"The instances of application of the rule under consideration to public officers in this state have been where the officer has sought a recovery from the municipality, and we are now for the first time called upon to determine whether it should be applied by constructing a trust in favor of the municipality upon the misconduct of an officer. The principle is the same, however, and it is settled that, 'if the prohibited or void contract has been executed, the officer becomes a trustee for the municipality, and is bound to account for any profits which he derived from the transaction.' 2 Dill. Municip. Corp. (5th Ed.) § 773, p. 1150."

We are mindful, of course, that the previously cited cases relate to municipal corporations, and understand fully, as was made crystal clear in *Friendship Heights Citizens Committee v. Funger*, 265 Md. 339, 289 A. 2d 329, that the plaintiff here is not a municipal corporation, and thus does not possess the unlimited power to sue and be sued, granted by the provisions of Article 23A, § 1 of the Annotated Code of Maryland. Friendship Committee is, however, a body politic created by Ch. 131 of the Laws of 1914, which, as amended, may now be found in § 66-1 through § 66-12 of the Montgomery County Code (1965), and the 1973 supplement. It thereby was empowered to receive tax monies from the taxpayers resident within its borders and was directed to engage in public improvements for the protection and benefit of the community. The cases make plain that the rules authorizing municipal corporations to seek judicial aid to assure that its properties and monies will not be unlawfully dissipated by wrongful acts of the public officers charged with the administration of its affairs, apply with equal force to lesser public corporations or associations.

In *Board of Directors of Ft. Scott Public Library v. City of Scott,* 7 P. 2d 533 (S. Ct. Kansas, 1932), the city questioned the capacity of library directors to sue under circumstances where it was made to appear that library funds unlawfully had been paid to the city. In sustaining the right of the library directors to bring the action, the Court said at 535:

"* * * We do not think it is necessary that express power be given by the statute to authorize an administrative board to maintain an action in court, where such board has the power to own and control property. Board of Park Commissioners v. Nashville, 134 Tenn. 612, 185 S. W. 694. The power to own and control property is nugatory unless the party vested with such power may call upon the courts to protect it in the ownership and use of such property. The board is a creature of the law, a legal entity, on which the statute confers powers and faculties which are of no force or effect unless it may vindicate the rights conferred in the courts."

In *Caddo Parish School Board v. Pyle,* 30 So.2d 349 (Ct. of Appeal of La. 1947), the capacity of a school board to seek to enjoin the operation of a planing mill interfering with the conduct of the school was recognized, the Court saying at 351-52:

"It would be absurd for the Legislature to create a political corporation, such as a school board, authorize and empower it to acquire property, buildings, etc., with funds derived from taxation, in order to carry out the purposes for which created, and then withhold from such legal entity the right and power to invoke the aid of the judicial branch of the state government to protect it in the possession of such property, and in its efforts to achieve and attain the important results contemplated in its creation. This right is inherent in such a corporation, and an incident to its existence. McQuillin on Municipal Corporations, Volume 6, Section 2650; Board of Commissioners of

Orleans Levee District v. Blythe, 163 La. 929, 113 So. 150."

The appellees contend that the decision of the Court of Appeals in *Friendship Heights v. Funger, supra,* is controlling upon the capacity of Friendship Heights to sue. It is true that the capacity to sue of this very appellant was therein denied. It is true also that *Funger* stressed that appellant was a public body of limited authority without express power to sue or be sued. The decision, however, directed itself to the facts and circumstances of that case, wherein Friendship Heights had brought an action to declare invalid and unenforceable agreements to which it was not a party and to restrain the effect of a Master Plan and zoning amendments applicable to lands lying outside its borders. Significantly, the Court said at 343 [331]:

"We are not to be understood, however, as passing on the question whether the Committee has the power to sue for the breach of contract to construct a road, which might be implied from the express power which was granted to it, *cf. McRobie v. Town of Westernport,* 260 Md. 464, 466, 272 A. 2d 655; *Perry v. Board of Appeals,* 211 Md. 294, 303, 127 A. 2d 507, or whether it could sue or be sued under Code 1957, 1966 Repl. Vol. Art. 26, §138 in an action affecting the tax monies paid to it."

It is of further significance that both *McRobie* and *Perry* at the pages cited *supra* reiterated the Court's prior approval of a statement from Dillon, Municipal Corporations, § 237 (5th Ed.):

"A municipal corporation * * * *can exercise the following powers, and no others*: first, created in *express words;* second, those *necessarily or fairly implied in or incident* to the powers expressly granted; third, those *essential* to the accomplishment of the declared objects and purposes of the corporation, — *not* simply convenient, but indispensable." (Italics in original.)

We hold that this limited public corporation possesses a capacity to sue under the circumstances alleged in this case because such a right is necessarily implied or is fairly incident to the powers expressly granted to it and is essential for the accomplishment of the objects and purposes it is directed by legislative fiat to achieve.

We do not reach the question posed by the Court of Appeals in *Funger, supra,* whether Article 26, § 138 has application to the Friendship Committee.

> *Judgments reversed.*
> *Costs in separate cases No. 156*
> *and No. 157 to be paid by the*
> *respective appellees.*