John Davis *et ux.* v. The Chautauqua Oil and Gas Company.

No. 15,521.    (96 Pac. 47.)

SYLLABUS BY THE COURT.

Contracts—*Oil-and-gas Lease—Forfeiture—Royalties.* An oil-and-gas lease interpreted and held not to provide for a forfeiture on account of the non-payment of stipulated royalties.

Error from Chautauqua district court; Granville P. Aikman, judge. Opinion filed May 9, 1908. Affirmed.

*R. H. Nichols, W. H. Sproul,* and *N. E. Van Tuyl,* for plaintiffs in error.

*W. S. Fitzpatrick, William B. Sutton,* and *William B. Sutton, jr.,* for defendant in error.

7—78 KAN.

The opinion of the court was delivered by

BURCH, J.: The plaintiffs executed an oil-and-gas lease of their land, which reads as follows:

"This agreement, made and executed in duplicate this 29th day of October, A. D. 1902, between John Davis and Mary Davis, parties of the first part, and L. A. Lockwood and George F. Gurnsey, parties of the second part:

"WITNESSETH, That the said parties of the first part, for the consideration of one dollar in hand paid, the receipt of which is hereby acknowledged, and of other valuable considerations hereinafter mentioned, do hereby lease, demise and let to the said party of the second part, its successors or assigns, for the term of ten (10) years, and as much longer as gas or oil may be found in paying quantities, from the date hereof, the following-described real estate situated in the county of Chautauqua and state of Kansas, to wit, S. ½ of N. W. ¼, section 23, township 34, range 11, acres 80; containing 80 acres, more or less. The party of the second part agrees to deliver to the party of the first part one-tenth of the oil realized from these premises, in tanks at the wells, without cost, or pay the market price therefor in cash, at the option of the first party. If oil or gas be found on these premises, all rights, benefits and obligations secured hereby shall continue so long as either can be produced in paying quantities.

"If gas is found in any well or wells, first party is to have on demand sufficient gas from such well or wells for domestic purposes on said premises, free, provided there be more than is needed by said party of the second part on said premises. If, however, second party shall sell or market gas from any well producing gas only, it shall pay first party therefor fifty dollars per year for and during the time such gas shall be sold or marketed, said payment to be made on each well within sixty days after commencing to use the gas therefrom, and annually thereafter.

"Second party agrees to locate all wells so as to interfere as little as possible with the cultivated portion of the premises, to bury all gas and oil lines where they interfere with the use and cultivation of the land, and pay all damages to growing crops by reason of its operation.

"The second party shall have the privilege of using sufficient water from the premises, and if necessary to drill therefor, to run all necessary machinery, but shall not use any water from private wells, cisterns or stock ponds without consent of party of the first part, and shall also have the right at any time to remove all machinery and fixtures placed on said premises.

"It is mutually agreed that the parties of the second part shall begin drilling within two miles of A. A. Spires's farm within eight months from the delivery thereof, or in case of failure to do so, then and in that case this lease shall become null and void. In case no oil- or gas-well be drilled on said premises within twelve months from date hereof, it shall be at the option of party of the second part to pay twenty-five cents per acre annually thereafter, at their office in Independence, Kan., or lay pipes from mains or wells to within fifty feet of residence occupied by first party on above-described land, and furnish gas for two stoves and two lights, and no other or additional expense shall be incurred under this lease by second party, and this lease be binding so long as gas shall be thus furnished; provided, that if wells are sunk royalties shall be paid as above provided for, otherwise this lease shall be null and void, and no longer binding on either party.

"The second party shall have the right to erect, lay, maintain and remove all pipes, pipe-lines, machinery and structures necessary for the production, preservation and transportation of oil and gas produced on said premises.

"The second party shall have the right to discharge any encumbrance on said premises, and shall have a lien thereon for the amount so paid, together with all costs and expenses incurred.

"This contract shall extend to and be binding upon the heirs, assigns, successors and personal representatives of the parties hereto.

"Executed in duplicate the day and year first above written."

The defendant, as the assignee of this lease, drilled a well in due time, which produced both oil and gas. Afterward the plaintiffs brought a suit to cancel the lease, claiming a forfeiture on the ground that the defendant did not pay oil royalties, did not furnish gas

for domestic uses, and failed to pay $50 per year gas royalty. The case was tried by the court, and upon the conclusion of the plaintiffs' evidence a demurrer to the evidence was sustained and judgment rendered against them.

After a careful canvass of the evidence the court is of the opinion the judgment was right, conceding that the lease is subject to forfeiture for the causes specified; but a more fundamental consideration is determinative of the case. The right to claim a forfeiture depends entirely upon the proviso inserted in the paragraph limiting the time within which wells were to be drilled. The subject of royalties had been duly treated in other parts of the lease, and no reference had been made to forfeiture as a penalty for the failure to pay them. The paragraph in question did not relate to royalties at all. It covered the subject of the drilling of wells and the consequences to attach in case no wells were drilled. If drilling did not begin within two miles of the A. A. Spires farm within eight months from the delivery of the lease it was to be void. The lessees were then granted an option. They might drill a well on the leased premises within twelve months from the date of the lease; failing in this they might, in lieu of drilling such well, either pay twenty-five cents per acre annually for the land or pipe gas to it for two stoves and two lights; otherwise the lease was to be null and void. But if wells should be sunk on the leased land the provision for royalties should control, and not the provision relating to cash rent and gas piped from elsewhere. The proviso has no relation to the subject-matter of the paragraph, except to exclude the idea that anything could be substituted for the agreed royalties if wells were sunk, and has no more force than if it were the concluding sentence of the paragraph.

The question is not how one of the parties might have regarded the lease before it was executed, or what either of the parties now desires it to mean, but what

the sense of the document is as it appears in the abstract. Parties are at perfect liberty to insert stringent forfeiture clauses in their oil-and-gas leases if they see fit to do so, but acting under the accepted canons of interpretation this court is constrained to say the lease under consideration does not provide for a forfeiture on account of the non-payment of stipulated royalties.

The judgment of the district court is affirmed.

PORTER, J., not sitting.