No. 33,951

The Citizens Building and Loan Association of Emporia, *Appellee*, v. Harriett A. Jones et al. (*Defendants*), and Helmerich & Payne, Inc., *Appellant*.

(87 P. 2d 633)

Opinion filed March 4, 1939.

*Carl Van Riper,* of Dodge City, *Eugene O. Monnet* and *Royce H. Savage,* both of Tulsa, Okla., for the appellant.

*Edward H. Rees* and *Everett E. Steerman,* both of Emporia, for the appellee.

The opinion of the court was delivered by

Hoch, J.: This case arises out of an action to foreclose mortgages on certain land in Kearny county, Kansas. The question presented is whether the mortgages are senior to a certain oil and gas lease. The lease was given and recorded subsequent to the mortgages, but the lessee claims waiver of priority by the mortgagee. The mortgagee admits an agreement to waive priority, but contends that the waiver was forfeited by the lessee by failure to meet the conditions of the waiver. The trial court found that the waiver had been forfeited, foreclosure and sale were ordered in accordance with the findings, motion for new trial was overruled, and the lessee appeals to this court.

There is little disagreement as to the facts. They were before the court on written stipulation and oral testimony.

Harriett A. Jones and Joseph W. Jones, her husband, hereinafter

called the landowners, were owners of large tracts of land in Kearny and Gray counties, Kansas. They secured large loans from the Citizens Building and Loan Association of Emporia, Kan., hereinafter called the loan company, and gave two notes for $47,000 and $13,000, respectively, secured by first and second mortgages on the land. The notes and mortgages were executed on December 5, 1934, and duly recorded. On November 23, 1935, the landowners gave to Helmerich & Payne, Inc., hereinafter called the oil company, an oil and gas lease on approximately five thousand acres of the mortgaged land in Kearny county. The lease was on the ordinary producer's form No. 88, and provided for the usual royalty to the lessors. One month thereafter, on December 23, 1935, the landowners and the loan company entered into a written agreement by which the loan company agreed to waive the priority of its mortgages in favor of the lease, "the same as though the lease had been made, delivered and recorded prior to the said mortgages." The landowners authorized the oil company "to pay any and all rentals and royalties that may become due and payable" to the loan company until the mortgages were released. The agreement further provided that "in consideration of the foregoing" the oil company "hereby promises and agrees to drill a well for oil and gas upon any of the land in Kearny county, which shall have been completed to a depth that oil and/or gas should reasonably be found in this locality within a period of twelve months from the date of the signing of this waiver of priority," and failure of the oil company "to have completed a well as aforesaid within said twelve months shall terminate this waiver of priority in its entirety and render it null and void and of no force whatever, and shall fully release said mortgagee from the terms of said waiver of priority to the same extent as though no waiver of priority had been executed by said mortgagee." Only the landowners and the loan company signed the agreement. The lease and the agreement were deposited in escrow in a bank in Garden City, Kan., with instructions to deliver both to the oil company upon commencement of a well before December 30, 1936. In compliance therewith, the bank delivered the lease and agreement to the oil company on October 9, 1936. The well had been started a few days before—about ten months after the agreement was signed.

The twelve months' period stipulated for completion of the well expired on December 23, 1936. The producing formation was not

reached until December 31, 1936, and the well was not completed until about February 28, 1937. On February 9, 1937—about six weeks after the expiration of the twelve months' period, and about nineteen days before completion of the well—the oil company wrote to the loan company asking that the waiver of priority be extended for completion of the well, and alleging that the failure to complete the well within the period fixed was "due to weather conditions and the roads into this locality, which was in the sand hills." On the following day, February 10, the loan company replied: "We are unable to grant your request for an extension of this waiver and agreement, as we are confronted with an immediate foreclosure . . . upon this land. The delinquencies upon our loans are now so severe that unless Mr. Jones is able to promptly pay the $2,492 interest, some of which is now past due for over a year, and to pay the 1936 taxes upon the Kearny county land, that we are unable to grant further concessions to Mr. Jones." The letter further recited that the foreclosure had been held in abeyance since June, 1936, to give the mortgagor a chance to market his cattle, and that the cattle had been marketed in January or February and did not sell to advantage; and that unless satisfactory arrangements were made by the mortgagor foreclosure proceedings would be had without further delay.

It is admitted that the oil company had spent between nineteen and twenty thousand dollars in completing the well, and that two-thirds of the amount was spent after December 23, 1936, and it was agreed in the written stipulation that the loan company "knew that a well was being drilled, knew that the well was not completed by December 23, 1936, but that said plaintiff did not have detailed information as to the progress being made in drilling same."

The abstract discloses no testimony as to the weather or road conditions complained about or as to efforts to complete the well within the year. There was some testimony as to negotiations for a new waiver of priority, but the parties were unable to agree upon terms.

Petition to foreclose the two mortgages was filed June 22, 1937, and the oil company, as lessee, was made a party defendant. Trial was had in the Kearny county district court, and on January 22, 1938, findings of fact were made and judgment rendered foreclosing the mortgages. The court found that the mortgage liens were prior and superior to the rights of the oil company, the lessee, and decreed

that the land in Gray county covered by the mortgages, but not included in the oil and gas lease, should first be sold and applied on the judgment; that the Kearny county land covered by the mortgages and part of which was included in the lease, should first be offered for sale subject to the lease, but that if such offer did not bring enough to pay the balance of the judgment with interest, taxes and costs, the land should be offered a second time free from the lease. Motion for new trial was made January 22, 1938, and overruled March 14, 1938. Appeal by the oil company, the lessee, followed.

The issue here presented is whether the loan company, the mortgagee, by word 'or conduct waived the forfeiture provided in the agreement to waive priority of its lien.

The substance of appellant's contention is that the loan company, if it intended to claim forfeiture, was bound to give prompt notice of such intention; that it failed to do so, although knowing that the oil company was continuing to spend large sums of money in completion of the well and that by its conduct it must be held to have waived forfeiture. The loan company, appellee, contends that the agreement to waive priority is unequivocal in its terms; that it provides for forfeiture of the waiver upon expiration of the year without completion of the well; and that forfeiture was not waived by word, act or conduct.

It is urged in support of appellant's contention that "the law abhors forfeitures." While that is true, it is equally true that the plain letter of an agreement is not to be disregarded. Forfeitures will be enforced where the language of the instrument is plain and unequivocal and shows beyond question that it was the intention of the parties to declare that a breach should operate as a forfeiture. (13 C. J. 541, 567, and cases there cited.) There is no abhorrence to the recognition and enforcement of a "condition subsequent" clearly provided in a conscionable contract, entered into in good faith. Whether a provision in a contract constitutes a "condition subsequent" or a "covenant" must depend upon the contract, the circumstances, and the intention of the parties. The general rule is that if the provision is a "condition subsequent" forfeiture ensues in case of a breach. (12 C. J. 411, and cases there cited.) In the case at bar there can be no question that the parties intended that the waiver of priority would be forfeited if the well was not completed within a year.

Appellant cites the case of *Chambers v. Anderson*, 51 Kan. 385, 32 Pac. 1098, in support of the proposition that since the waiver was to go into effect *immediately* upon execution and delivery of the agreement, the forfeiture provision cannot therefore be construed as a condition subsequent providing for automatic forfeiture. The case of *Chambers v. Anderson*, supra, involved an agreement for the sale of land. There was a provision in the agreement that if the buyer failed to make the payments promptly and strictly in compliance with the terms of the contract, and failed to perform every agreement and stipulation strictly and literally, then in that event *"so far as it may bind said first party* (first party being the seller), the agreement shall be null and void and would require no declaration of forfeiture or performance of any other act by the first party." Upon failure to make payment according to the terms of the instrument the vendor sued the vendee for payment of the balance, and the vendee took the position that she could either make the payments and get the land or could treat the agreement as null and void, and that therefore the vendor had no right to sue, as she had chosen to consider the agreement void. The court held that even though the contract provided for forfeiture without declaration of forfeiture, the provision was for the benefit of the vendor, which he could exercise at his option. It will be noted, however, that in this case the provision was that the agreement should be null and void "so far as it may bind said first party," if the buyer failed to comply with the terms of the contract, and the vendor in that case waived forfeiture and sued on the contract. In the case at bar the loan company did not waive forfeiture. It declined to grant extension of the waiver. On like grounds the case of *Richardson v. Woodlawn Town Co.*, 5 Kan. App. 626, 47 Pac. 556, cited by appellant, is clearly distinguished from the instant case. The party there entitled to forfeiture waived it and sued on the contract.

Appellant places a good deal of stress upon the case of *Mickleson v. Gypsy Oil Co.*, 110 Okla. 117, 238 Pac. 194. In that case the court was called upon to pass upon an assignment of an oil and gas lease. The assignor made an assignment in the ordinary form and then added a provision that the assignment was upon the express condition that he was to have all the drilling for oil and gas to be done by Gypsy Oil Company upon the land covered by the lease. The court held that the assignment was absolute and that there was created simply a covenant on the part of the assignee that he could

give his drilling to the assignor and that there was no automatic forfeiture. The court said that mere words, although they might be very strong, would not entail forfeiture unless it appears clearly from the instrument itself that it was the intention of the grantor and the understanding of both parties to the instrument that forfeiture would result. There was no provision that the assignment should terminate and be null and void upon the happening of any specific event. The case, therefore, differs essentially from the instant case, since the agreement here presented provided specifically for forfeiture of the waiver if the well was not completed within the year.

Appellant invokes the well-established doctrine enunciated in 21 C. J. 104, that "if there has been a breach of the agreement sufficient to cause a forfeiture, and the party entitled thereto either expressly or by his conduct waives or acquiesces in it, he will be precluded from enforcing the forfeiture, and equity will aid the defaulting party by relieving him against it, if necessary." Did the loan company waive forfeiture? It is not contended that it *expressly* did so. On the contrary, when the oil company wrote asking it to extend the agreement, it replied the next day, declining to do so. But did the loan company by its *conduct* in failing to give notice of intention to claim forfeiture, although knowing that a well was being drilled and money was being expended subsequent to the expiration of the year, waive forfeiture? Where no notice of intention to claim forfeiture is required by the instrument, waiver of forfeiture must be manifested in some unequivocal manner by some distinct act or by inaction inconsistent with intention to claim forfeiture. Mere silence of a party is not waiver unless such silence is under circumstances requiring him to speak. The silence must be such a silence as can clearly be said to be deception. The rule is clearly stated in 67 C. J. 306. It is so well established in the law that there is little need for further reference to authorities. Among the decisions of this court see *Cure v. Insurance Co.,* 109 Kan. 259, 198 Pac. 940; *Johnson v. Dumond,* 130 Kan. 516, 287 Pac. 249; and *Musgrave v. Equitable Life Assurance Society,* 124 Kan. 804, 262 Pac. 571.

In *Hinshaw v. Smith,* 131 Kan. 351, 291 Pac. 774, it was held in an action to forfeit a mining lease because of failure to comply with the requirements as to drilling and prospecting that the lessor had not waived the right to insist upon a forfeiture, even though

he had accepted past-due rent and royalties after the commencement of the action.

By its letter of February 9, 1937, the oil company clearly implied that it considered the waiver no longer in effect. Other correspondence is of similar import. It is also a circumstance of note in this connection that the oil company, in its letter of May 24, 1937, addressed to the loan company, stated:

"We are not insisting on a permanent waiver of priority as we feel that the ranch is worth the amount of the mortgage and if it should come to a point of foreclosure we could step in and pay off the mortgage and feel that we bought a mighty cheap piece of property; however, this is the last thing we would want to do, as we want Mr. Jones to retain this land."

If the oil company believed, as indicated in this letter, that the land was well worth the amount of the mortgage, it might well choose to complete the well even though the year had elapsed. The case is therefore clearly distinguishable from *Kirsch v. City of Abilene,* 120 Kan. 749, 244 Pac. 1054, cited by appellants, and many others of like import where equity refuses to uphold forfeiture on the ground that the party relying upon forfeiture has stood idly by and deliberately permitted the adverse party to enter into obligations and make large expenditures knowing that great losses will result which might be avoided by asserting claim. Not only does the agreed statement of facts in this case reveal that the loan company, though knowing the well was not completed by December 26, 1936, "did not have detailed information as to the progress being made in drilling same," but there is nothing in the record to show that the completion of the well would necessarily result in loss to the oil company. In fact, the oil company's letter, just quoted, indicates the very opposite. The issue here is solely one of priority as between the mortgages and the lease. It cannot therefore be said on this record, or as a matter of law, that loss of priority meant inevitable loss to the party losing it.

The condition of forfeiture was clear and unmistakable. Appellant failed to meet the condition. The lessee had a right of priority as long as it had not broken the condition of waiver. Expiration of the year without completion of the well worked forfeiture under the clear terms of the instrument. We find no word or conduct on the part of the loan company which can be held to constitute waiver of forfeiture. (*Harter v. Edwards,* 108 Kan. 346, 195 Pac. 607; *Wright v. Cummings,* 108 Kan. 667, 196 Pac. 246; *Ritchie v. K. N. & D. Rly. Co.,* 55 Kan. 36, 39 Pac. 718.)

Appellant contends that the court erred in its decree as to the manner of sale of the Kearny county land. The mortgages covered more land in Kearny county than was included in the lease, and it is contended by appellant that the decree should have been to first offer for sale the mortgaged land that was not included in the lease, and after applying the proceeds thereof, to then offer the mortgaged land subject to the lease, and if it should not then sell for enough to pay the balance due, to offer it free and clear of the lease. We find nothing inequitable in the manner of sale ordered by the trial court.

Other contentions by the appellant are incidental to the issues already considered and require no further comment.

The judgment, order and decree of the trial court are affirmed.