(766 P.2d 182)
No. 61,411

WARREN G. RICE, SHIRLEY J. RICE, KENNETH E. RICE, VIVIAN P. ELLIOTT, and LLOYD P. ELLIOTT, *Appellants*, v. DANNY HILLENBURG and HAROLD A. HILLENBURG, D/B/A HILLENBURG PIPE & SUPPLY COMPANY, a/k/a/ HILLENBURG OIL COMPANY, *Appellees*.

Opinion filed December 16, 1988.

*Richard D. Greene, Ralph R. Brock*, and *Jana D. Abbott*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for appellants.

*Larry E. Keenan*, of Keenan Law Firm, P.A., of Great Bend, for appellees.

Before LARSON, J., STEVEN P. FLOOD, District Judge, assigned, and J. STEPHEN NYSWONGER, District Judge, assigned.

LARSON J: Warren, Shirley, and Kenneth Rice and Vivian and Lloyd Elliott (Rice family), owners of the surface of and one-half of the minerals under a tract of land in Kiowa County, Kansas, appeal the trial court's summary judgment ruling that they waived payment of, or were estopped to assert nonpayment of, the delay rental under an "unless" oil and gas lease wherein Hillenburg Oil Company (Hillenburg) was the lessee. The Rice family appeals both the denial of its motion for summary judgment and the grant of Hillenburg's summary judgment motion.

In May of 1985, Harold Hillenburg contacted Warren Rice to obtain an oil and gas lease from the Rice family. These men knew and discussed that Mobil Oil Corporation (Mobil) claimed the exclusive right to lease all the minerals under the property. Nevertheless, on May 16, 1985, the Rice family executed an oil and gas lease to Hillenburg.

The lease included the following standard delay rental provision in an "unless" oil and gas lease:

"If operations for the drilling of a well for oil or gas are not commenced on said land on or before the 16th day of May, 1986, *this lease shall terminate as to both parties, unless* the lessee shall on or before said date pay or tender to the lessor . . . the sum of One Hundred Sixty and no/100 Dollars, which shall operate as a rental and cover the privilege of deferring the commencement of operations for drilling for a period of one year." (Emphasis added.)

Under the normal "unless" type of drilling/delay rental clause there is no legal obligation enforceable by the lessor against the lessee for the payment of the delay rental. *Stady v. The Texas Company*, 150 Kan. 420, 424, 94 P.2d 322 (1939). If payment is not properly made when due, the lease terminates automatically. *Doornbos v. Warwick*, 104 Kan. 102, 103, 177 Pac. 527 (1919).

On July 30, 1985, attorney Steve Church (Church) of Greensburg, Kansas, wrote Hillenburg stating the Rice family had learned a 1937 mineral deed gave Mobil the right to lease the entire interest in the minerals and offered to refund the bonus if Hillenburg would release the lease.

In January of 1986, Mobil's assignee, TGT Petroleum Corporation (TGT), sued Hillenburg, seeking to cancel the Rice family lease. That case is referred to herein as Hillenburg I and the instant case as Hillenburg II.

Hillenburg did not pay the delay rental that was due on May 16, 1986. Hillenburg's explanation for its failure to pay the delay rental is stated in Harold Hillenburg's affidavit: "I did not pay the delay rental provided for in the oil and gas lease to be paid on May 16, 1986, for the reason that we were engaged in the litigation with TGT Petroleum Corporation, defending the lease in question and the Rice family's right to execute it, and I did not believe the delay rental was expected to be paid under the circumstances."

None of the Rice family were made parties to Hillenburg I, but Hillenburg's attorney contacted Church several times regarding the suit and, at the November 6, 1986, hearing on motions for summary judgment, Church was introduced by Hillenburg's attorney as the Rice family attorney. The trial court ruled in Hillenburg I that the Rice family had authority to lease its interests in the minerals, and a journal entry so stating was filed December 8, 1986. Our court affirmed that decision in *TGT Petroleum Corp. v. Hillenburg*, unpublished opinion No. 60,399 filed December 10, 1987, *rev. denied* 242 Kan. 905 (1988).

On December 3, 1986, members of the Rice family (except for Vivian P. Elliott and Lloyd P. Elliott, her husband) and Robert Corns, executive vice president of the Greensburg State Bank, executed an affidavit of nonpayment of delay rental by Hillen-

burg. The affidavit was signed and acknowledged on December 9, 1986, by the Elliotts and on the same day the Rice family executed a new oil and gas lease to TGT. The new lease was filed with the Kiowa County Register of Deeds on December 15, 1986. Several days later Harold Hillenburg signed and caused to be recorded an affidavit stating the delay rental due under the Rice-Hillenburg lease had been waived during Hillenburg's defense of the lease in Hillenburg I. On December 23, 1986, TGT's attorneys made demand on Hillenburg's attorneys for the release of the Rice-Hillenburg lease. On February 3, 1987, TGT's attorneys made demand on Hillenburg directly for release of the Rice-Hillenburg lease pursuant to K.S.A. 55-206 and threatened suit under K.S.A. 55-202. Hillenburg II followed.

In May of 1987, Hillenburg tendered payment of delay rental on the Rice-Hillenburg lease to the Greensburg State Bank, but this tender was refused by the Rice family.

The Rice family agrees Church was asked to write the July 1985 letter offering to refund the lease bonus in exchange for Hillenburg's release of the lease but categorically denies that Church was authorized to take any other action in connection with the Hillenburg I case. The Rice family claims it had no knowledge Church attended the summary judgment hearing and denies that anyone informed it of the hearing or Church's expected attendance. The Rice family denies Hillenburg had any basis for the belief that the delay rental due May 16, 1986, would not be expected to be paid if Hillenburg became involved in litigation about the validity of the lease. The Rice family affidavit is not controverted that it began negotiating with TGT for a new lease after Hillenburg failed to pay the 1986 delay rental and before knowing the outcome of Hillenburg I. This contention is substantiated by the fact that three of the Rice family and the official of the bank executed the affidavit of nonpayment of rental on December 3, 1986, which was several days before the journal entry in Hillenburg I was filed.

In granting summary judgment in Hillenburg II, the trial court pointed to the $1,600 bonus paid by Hillenburg to the Rice family; Hillenburg's expenditure of more than $6,000 in defending the lease in Hillenburg I; the Rice family's awareness of the litigation in Hillenburg I; and the fact it is simply not equitable to terminate and forfeit this lease for failure to pay the $160 delay rental.

Courts have been substantially unanimous in holding that if a lessee fails to pay or tender the rental on or before the due date under an "unless" oil and gas lease, the lease terminates automatically. Professor Williams recognized the strictness of this rule in his treatise:

"This rule of automatic termination of the lease for failure to make timely payment or tender of rental may seem unduly harsh in some cases. . . . Nevertheless the cases which hold the lease has automatically terminated for failure to make timely payment seem correct. The 'unless' type drilling and rental clause is a clause of limitation, not one of covenant or condition. The lessee may relieve himself of further liability under the lease by simply failing to commence operations or pay rentals during the primary term. The lessee who has this benefit of the automatic termination of the lease should have no standing to claim relief from the automatic termination when he is responsible for a failure to make timely payment of rental." 3 Williams, Oil and Gas Law § 606.2, p. 160 (1986).

Professor Pierce, in recognizing the harshness of this rule, states:

"There appears to be no room for honest mistakes; inadvertent error concerning the time, place, manner, or amount of payment can terminate the lease. Unless there are exceptional circumstances, equity will not intervene. See § 9.39. The general rule governing payment of delay rental requires strict adherence to the terms of the drilling/delay rental clause. A lessee who is 'a day late or a dollar short' will, in most instances, lose their lease. See e.g., *Morton v. Sutcliffe*, 175 Kan. 699, 266 P.2d 734 (1954) (due 22 April, paid 28 April, lease terminated)." 1 Pierce, Kansas Oil and Gas Handbook § 9.35 (1986).

Although our Kansas courts have normally required strict compliance with the terms of a delay rental clause, there are two categories where failure to timely pay a delay rental has been excused.

The first is where the lessee attempted to make payment but the payment failed for some reason. In *Browning v. Weaver*, 158 Kan. 255, 146 P.2d 390 (1944), payment was made to the wrong depository but to lessor's account. Lessor knew about the payment, had access to the money, and objected only after the lessee spent $16,000 to drill a producing well on an adjoining lease. Payment of the delay rental was deemed timely made and the lease was not forfeited.

In *Young v. Arkansas Fuel Co.*, 117 Kan. 698, 232 Pac. 871 (1925), the delay rental was mailed two weeks before its due date but was lost in the mail and never found. The lessee issued a new check several months later when the error was discovered.

In granting the lessee relief from termination, the court stated:

"The cancellation of a lease of the character here involved for a failure to make the annual payment is doubtless not as abhorrent to equity as an ordinary forfeiture. [Citation omitted.] This court has held, however, that cancellation may be refused in such a situation as that here presented, where the default is unintentional and excusable and the lessee had expended considerable sums in developing tracts in the vicinity." 117 Kan. at 700.

The earliest Kansas case excusing failure to timely pay a delay rental is *Kays v. Little*, 103 Kan. 461, 175 Pac. 149 (1918). In *Kays*, the lessee deposited the delay rental in the mail in sufficient time to arrive in advance of the due date. The payment was delayed in the mail and delivered three days after the rental due date. Lessee was drilling on an adjoining lease and the court stated: "It was not through any act of his that the payment did not reach the plaintiff in ample time." 103 Kan. at 463.

We believe each of these cases to be clearly distinguishable from the factual situation here because Hillenburg never made any attempt to pay the delay rental payment which was due May 16, 1986.

The second category where the Kansas Supreme Court recently acknowledged a limited excuse for nonpayment of a delay rental is where the lessor attacked the lessee's title before the payment became due, and the attack had not been resolved at the time payment should have been made. In *Thurner v. Kaufman*, 237 Kan. 184, 699 P.2d 435 (1985), lessor locked lessee out of the leased premises although lessee was ready, willing, and able to drill or pay rentals while the suit was pending. The rule for "excuse" due to an attack on title is stated in 3 Williams, Oil and Gas Law § 606.6 (1984):

"Where a lessee under an 'unless' oil and gas lease is ready, able, and willing either to develop the premises or to pay rentals, an attack upon the lessee's title by the lessor will relieve the lessee of the duty to either proceed with drilling operations or pay the delay rental specified in the lease during the continuance of the challenge to his title."

That rule was adopted in *Thurner*, where the court went on to state:

"If the lease in this case had subsequently been found by the court to be valid, the lessees would have been permitted to make the payments within a reasonable time thereafter. *Jicarella Apache Tribe v. Andrus*, 687 F.2d 1324, 1342 (10th Cir. 1982)." 237 Kan. at 193.

It is important to note that in *Thurner*, the contest was between

lessor and lessee while in Hillenburg I, the contest was between Hillenburg and TGT, and the Rice family was not a party to the action. In order to affirm the trial court herein, we would be required to adopt a rule that, irrespective of the parties to the action, where the validity of an oil and gas lease is in issue or being litigated no delay rentals under the lease are required to be paid. Such an extension of our existing decisions is not justified.

With *Browning, Young,* and *Kays* distinguished because in all three instances delay rental payment was attempted, and *Thurner* limited to its particular facts involving an ongoing lawsuit between lessor and lessee, all other existing authority would compel a holding of leasehold forfeiture. In *Doornbos v. Warick,* a delay rental was offered ten days late because lessee failed to note the lease required payment in advance. The Supreme Court characterized the effect of the "unless" clause as requiring forfeiture and terminated the lease, refusing to apply *Kays* and noting no "equitable reason appears for not cancelling the lease in the present action." 104 Kan. at 104.

*Gasaway v. Teichgraeber,* 107 Kan. 340, 191 Pac. 282 (1920), indicates the relentless manner in which the failure to properly pay a delay rental payment has been applied. The rental was due April 17, mailed to the bank April 17, received by the bank April 18, and credited to lessor's account April 19. The court did not characterize this as a forfeiture but as:

"a mere holding of a party to the contract it has made. There was no need of delaying the payment, and the failure to remit in time was not chargeable to the [lessors] and the delay left the [lessee] in the attitude of calling on the [lessors] to make or recognize a different contract from the one the parties had voluntarily made." 107 Kan. at 341.

Although the elements of estoppel and waiver are not specifically enumerated in the oil and gas lease cases where failure to pay a delay rental is "excused," the trial court herein found both waiver and estoppel were applicable.

Our Supreme Court has defined waiver as follows:

"A waiver is an intentional renunciation of a claim or right and exists only where there has been some absolute action or inaction inconsistent with that claim or right."

" 'A waiver of a contract right implies a voluntary and intentional renunciation of it, and some positive act or positive inaction inconsistent with the contract right is necessary to create a waiver.' [Citations omitted.]" *Procter Trust Co. v. Neihart,* 130 Kan. 698, 705, 288 Pac. 574 (1930).

The problem with a finding of waiver in this case is that such theory assumes a party with the right to terminate must take some affirmative action to invoke the right. The major characteristic which distinguishes an "or" oil and gas lease from an "unless" oil and gas lease is the lessee's nonpayment of a delay rental under an "or" lease violates a covenant and allows lessor to cancel the lease while nonpayment under an "unless" lease automatically terminates the lease. 1 Pierce, Kansas Oil and Gas Handbook § 9.29. The Rice family was not obligated to take any action to enforce the termination of the lease and it could not have waived such termination by failing to act. The doctrine of waiver does not apply.

The elements of equitable estoppel have been enumerated by our Kansas Court as follows: (1) There must have been a false representation or concealment of material facts; (2) it must have been made with knowledge, actual or constructive, of the facts; (3) the party to whom it was made must have been without knowledge or the means of knowing the real facts; (4) it must have been made with the intention that it should be acted upon; and (5) the party to whom it was made must have relied on or acted upon it to his prejudice. *Place v. Place*, 207 Kan. 734, 739, 486 P.2d 1354 (1971) (quoting *Pelischek v. Voshell*, 181 Kan. 712, 313 P.2d 1105 [1957]).

The elements of equitable estoppel are not available to substantiate the trial court's judgment. The Rice family made no false representations and concealed no material facts. Two months after executing the lease the Rice family expressed in writing its belief it had no right to do so. Hillenburg was actively involved in defending its lease in Hillenburg I when it chose not to pay the delay rental of May 16, 1986. Hillenburg was not induced by the Rice family to take the action it did, but did so because it believed it to be for its own best interests as an oil and gas operator with production in the area.

*Reno v. Beckett*, 555 F.2d 757 (10th Cir. 1977), a contractual decision involving Kansas law, correctly holds that a position taken by a party in one suit cannot be claimed as working an estoppel in a separate suit in favor of a party who was a stranger to the first suit. *Reno* was an action for specific performance of a contract for the sale of realty which provided for automatic

termination if title defects were not waived. The buyers chose not to waive the title defect but placed the purchase price in escrow and later withdrew parts of the funds. The contract terminated by its specific provisions and when the title problems were later resolved, the court refused to allow the buyer to enforce a contract which had terminated by its own provisions.

The Tenth Circuit explained that any detrimental action taken by the buyers was not induced by any misrepresentation or actions of the sellers but due solely to the buyers' own actions. "An estoppel cannot be predicated on the unilateral, uninvited act of the party asserting the estoppel." 555 F.2d at 768. Such is also the case herein.

One final issue remains. The Hillenburg characterization of, and its legal conclusions from, the actions of Church are unjustified. The Rice family's uncontroverted affidavit limits Church's employment only to the demand of a release of the Rice-Hillenburg lease in July of 1985. Church never took any affirmative action and was at best an interested observer at the time of the summary judgment hearing in Hillenburg I. No authority of Church to bind the Rice family is shown. The activities of Church give no basis for extension of the leasehold term or a finding of estoppel or waiver against the Rice family.

The decision of the trial court is reversed. Judgment is entered holding the Rice-Hillenburg oil and gas lease dated May 16, 1985, expired by its own terms.