(897 P.2d 191)
No. 72,564

M & C OIL, INC., *Appellant*, v. JANE GEFFERT, *Appellee*.

Opinion filed June 23, 1995.

*Kurt F. Kluin*, of Chanute, for the appellant.

*Robert V. Talkington*, of Talkington & Chase, of Iola, for the appellee.

Before BRAZIL, P.J., LEWIS, J., and JAMES W. BOUSKA, District Judge, assigned.

LEWIS, J.: M & C Oil Company, Inc., was the lessee and Jane Geffert was the lessor in a 1979 oil and gas lease. The lease contained a clause requiring the payment of a minimum royalty. This clause was inadvertently breached by the lessee. The trial court ordered the lease canceled as a result. The lessee appeals.

The lease in question was a Form 88 (Producer's) lease, and the form was altered by the parties. At the time of the trial, there was a producing oil well located on real estate covered by the lease.

The form of the lease was altered in three respects. The clause providing for delay rentals and declaring the lease to be void unless delay rentals were paid was stricken. In its place, the following clause was inserted:

"It is agreed that the royalty in each year, commencing with the year of August 1, 1979, shall not be less than Two Thousand ($2,000.00) Dollars and if in any lease year the royalty does not equal said sum of $2,000.00, the lessee agrees to pay the lessor the difference between said sum of $2,000.00 and the royalty received; such payment to be made within thirty (30) days of the close of the lease year."

In addition, the parties added the following clause: "In addition to the ⅛th Royalty Interest, the Lessor shall receive 7½% of ⅝th Over-riding Royalty Interest, which shall be free & clear of any operating expenses. Lessee shall not drill any well or wells in a cultivated field, without first receiving Lessor's permission in writing to do so."

There were apparently no difficulties between the parties until the 1992-93 lease year. The minimum royalties under the lease were paid to the lessor by the pipeline company over whom the

lessee had no control and with whom the lessee apparently had no contact. As near as we can determine from the record, the lessee had never been called upon to supplement the royalty payments under the lease to reach the minimum payment of $2,000. However, from August 1, 1992, to July 31, 1993, the royalties paid to the lessor by the pipeline company were less than the $2,000 minimum. The lessee was unaware of this shortfall. Consequently, the lessee failed to transfer funds to make up for the shortfall in royalties within 30 days of the close of the lease year. The lessor then took the position that the failure to pay the minimum royalties automatically terminated the lease.

The lessor then notified the lessee in writing that the lease had been terminated by reason of nonpayment of minimum royalties. She further demanded that all wells on the premises be plugged and all equipment be removed.

Under the facts stipulated to by the parties, the lessee was unaware that the minimum royalty had not been paid until it received notice from the lessor that she considered the lease to have been terminated. The lessee did not receive any information from the pipeline company as to the royalty payments made by it to the lessor. The parties agree that the lessor never made a formal demand on the lessee for payment of any sum towards the minimum royalty.

The parties exchanged letters for some period of time. At one point, the lessee asked the lessor for an accounting of royalties received. No such accounting was provided.

In time, the lessee filed this action, seeking to quiet title to the lease and requesting damages incurred as a result of the interruption of the lease.

The parties disagreed as to how to compute the minimum royalty amount of $2,000. The lessee argues that we are to consider both the one-eighth royalty received by the lessor and the 7.5 percent overriding royalty received by the lessor in determining how much of the minimum payment of $2,000 was received. Under this calculation, the lessor was short $228.43 in receiving the minimum $2,000. On the other hand, the lessor argues that what she received by way of an overriding royalty cannot be counted in reaching the

minimum figure of $2,000. Under her calculation, she is still owed $701.38 in minimum royalties.

The parties presented this action to the trial court under stipulated facts and stipulated documents. The court granted summary judgment to the lessor and canceled the lease for failure to make the minimum royalty payment. The question of damages was apparently not ruled on by the trial court, and the amount still owed to the lessor under the minimum royalty clause was not computed.

## CANCELLATION OF LEASE

The lease in this case was canceled or forfeited because of the inadvertent failure by the lessee to pay the minimum royalties due under the clause inserted into the form lease by the parties. The question we must determine is whether forfeiture was warranted under the facts shown.

The trial court reached its decision on the basis of stipulated facts and documents. "The appellate courts have de novo review of cases decided on the basis of documents and stipulated facts." *Lightner v. Centennial Life Ins. Co.*, 242 Kan. 29, Syl. ¶ 1, 744 P.2d 840 (1987). As a result, we are not bound by the decision of the trial court.

It is somewhat difficult to determine on what basis this case was decided. However, the trial court appears to have spurned equitable consideration and to have decided that the terms of the lease required its cancellation. We reach this conclusion from the following comment by the trial court:

"M&C contends that based on equitable considerations forfeiture of the lease should not be ordered.

"Geffert contends that the lease is clear in its terms and that failure of M&C to make the minimum royalty payment results in cancellation of the lease. I agree with Geffert's position."

In reaching its decision, the trial court relied on *Morton v. Sutcliffe*, 175 Kan. 699, 266 P.2d 734 (1954). In that case, the lease required a minimum payment of $160 in advance. The Supreme Court affirmed a decision canceling the lease for nonpayment of the minimum due and made the following comments:

"We have never held in the absence of equitable considerations that we would write a contract for parties different from the one they entered into. No equity considerations are urged on us here. There is no ambiguity in the lease. It provides at the outset the payment of $160 payable in advance. We all know the meaning of payment in advance is payment at the start of the term. Then comes the provision:

'In any year when lessees fail to pay the above minimum, this lease shall thereupon cease to be of any force or effect between the parties hereto or their successors or assigns.'

"It would be difficult to draw a clearer provision that the lease should cease to be in effect when lessees should not pay the rental on the date when due." 175 Kan. at 702.

In this case, the lease contains no language requiring cancellation or voiding of the lease if the minimum royalty was not paid. For this reason, the trial court's reliance on *Sutcliffe* was misplaced. *Sutcliffe* was merely enforcing the agreement of the parties to the lease. In this case, the parties did not agree that the lease would be automatically void or forfeited in the event the minimum royalty was not paid.

The trial court also relied upon the decision of *Thurner v. Kaufman*, 237 Kan. 184, 699 P.2d 435 (1985). We conclude *Thurner* is a unique factual package which is not applicable to the facts now under consideration. In *Thurner*, the lessee had misused the surface rights to the damage of the lessor and had done so despite a court order issued to prevent such damage. The Supreme Court described the actions of the lessee in *Thurner* as "flagrant" and "reprehensible." We believe the court's cancellation of the lease in *Thurner* to have been a response to the flagrant and reprehensible conduct of the lessee. The lessee in *Thurner* had shown a propensity to ignore its duties not only under the lease, but under orders of the court as well. It is perfectly obvious under the facts in *Thurner* that nothing short of cancellation would protect the lessor from further damage. Nevertheless, in reaching its decision, the Supreme Court in *Thurner* accurately sets out the law as follows:

"Although courts have shown an unwillingness to declare forfeiture for breach of express provisions which limit the lessee's use of the surface, forfeitures have been granted, in the absence of an express forfeiture clause, in other situations. For instance, this court has awarded cancellation for breach of the implied covenant to develop and for abandonment. See *Rook v. James E. Russell Petroleum,*

*Inc.*, 235 Kan. 6, 679 P.2d 158 (1984); *Shaw v. Henry*, 216 Kan. 96, 531 P.2d 128 (1975); *Vonfeldt v. Hanes*, 196 Kan. 719, 414 P.2d 7 (1966); *Brinkman v. Empire Gas & Fuel Co.*, 127 Kan. 551, 274 Pac. 277 (1929); *Howerton v. Gas Co.*, 81 Kan. 553, 106 Pac. 47 (1910). In *Howerton*, this court stated, 'If the remedy in damages is impracticable and a forfeiture in the given case is not unconscionable, and the forfeiture must be decreed to prevent injustice, the power of a court of equity to grant it can not be doubted.' 81 Kan. at 561." 237 Kan. at 189.

This case is not similar to *Thurner*. This is a case in which the failure to pay the minimum royalty was largely the result of inadvertence. There is no language in the lease requiring forfeiture, and it appears that a proper award of damages would restore the lessor to the position she was in before the breach took place. There is a producing well on the lease which may continue to produce to the benefit of both parties. It appears to us that a forfeiture under these circumstances could be a serious financial blow to the lessee and a windfall for the lessor. This is a case where the remedy in damages is adequate and practical, and forfeiture borders on the unconscionable. The lessee in this case is not guilty of any conduct which might even be remotely referred to as flagrant or reprehensible.

We believe that *Edwards v. Gas Co.*, 65 Kan. 362, 69 Pac. 350 (1902), is applicable to these facts. In that case, the lessee failed to make a payment of $50 as required by the lease. The trial court refused to cancel the lease. The Supreme Court affirmed and said:

"While a stipulation in an oil and gas lease, providing for a forfeiture of the lease for nonpayment of rent reserved, is inserted for the benefit of the lessor, and is to be strictly construed for his benefit and protection, yet, where the time of payment of such rental is neither in express terms nor by necessary implication made of the essence of the lease between the parties, equity may excuse the default in payment, and will not declare a forfeiture and cancellation of the lease in a case where it would be *inequitable and unconscionable so to decree.*" (Emphasis added.) 65 Kan. 362, Syl. ¶ 1.

The court further stated:

"While it is undoubtedly true that provisions for forfeiture in leases of this character are for the benefit of the lessor, and are more strictly enforced than in the ordinary lease between landlord and tenant, yet it is not a rule of universal application that all defaults made by the lessee entitle the lessor to declare a forfeiture, or have a decree canceling the lease.

"The action here brought is equitable. *The time of payment specified in the lease is neither in express terms nor by necessary implication of the essence of the contract. In the absence of such stipulation, equity will not decree the cancellation of a contract for the failure of a party to comply strictly with its terms when it would be unconscionable so to do.* While the very nature of the undertaking, the situation of the parties, the small amount of rent reserved in leases taken for the purpose of development of new territory, the liability of exhaustion of the supply from wells sunk on adjacent property, all conduce to render equitable a more strict compliance with the terms of the lease by the lessor in cases of this character than in ordinary cases of landlord and tenant; yet, as in this case the defendant company had expended a large amount of money in development work, had discovered a paying well upon the property, increasing the amount to be paid under the terms of the lease, and as the trial court specifically states at the conclusion of his findings that 'the above and foregoing answers are only in response to the questions submitted by the plaintiffs and are not intended to include all the issuable facts in the case. . . .' " (Emphasis added.) 65 Kan. at 367.

We choose to adopt the approach taken in *Edwards*. This position is favored by Professor David Pierce, who wrote the Kansas Oil & Gas Handbook:

"If the lessee fails to comply with the royalty clause, the lessor can bring an action for breach of the lease contract. The obligation to pay royalty is a covenant of the lease, not a condition. Therefore, the lease will not automatically terminate for failure to pay royalty. *Edwards v. Iola Gas Co.*, 65 Kan. 362, 69 P. 350 (1902) (court refused to cancel lease for failure to pay royalty on time). The court in *Davis v. Chautauqua Oil & Gas Co.*, 78 Kan. 97, 96 P. 47 (1908), discusses the difference between the delay rental clause, which creates a condition to the continued validity of the lease, and the royalty clause, which is merely a covenant by the lessee to pay. As in *Edwards*, the court in *Davis* refuses to grant the remedy of forfeiture for non-payment of royalty.

"However, the recent case of *Thurner v. Kaufman*, 237 Kan. 184, 699 P.2d 435 (1984), demonstrates the court's willingness to use the remedy of forfeiture even when the lessee's obligations are phrased as covenants as opposed to conditions. In *Thurner* the covenants breached concerned the lessee's use of the surface of the leased land. The court phrases the issue as: '[W]hether forfeiture for breach of an express covenant is a proper remedy in the absence of an express forfeiture provision in the oil and gas lease.' *Thurner*, 237 Kan. at 187, 699 P.2d at 438. The court affirms the trial court's cancellation of the lease for failure to comply with the express surface use covenants.

"Even under the *Thurner* approach, failure to pay the royalty in strict compliance with the lease probably will not warrant forfeiture unless there is evidence of a 'continuous unreasonable' failure to comply with the terms of the covenant. *Thurner*, 237 Kan. at 189, 699 P.2d at 439. The court apparently limits the *Thur-*

*ner* rule to a breach of 'essential' lease clauses; the court refers to the express covenant to pay royalty as an 'essential' part of the lease which 'goes to the very heart of the lease.' *Thurner*, 237 Kan. at 189, 699 P.2d at 439. As an equitable remedy, the court can refuse to cancel the lease when it would be 'unconscionable' to the lessee. *Thurner*, 237 Kan. at 189, 699 P.2d at 439. Therefore, there is still considerable difference between the covenant to pay royalty and the conditional nature of the habendum and drilling/delay rental clauses." 1 Pierce, Kansas Oil and Gas Handbook § 9.56, pp. 9-80 to 9-81 (1986).

Our research indicates that the law does, indeed, "abhor a forfeiture." The decisions by our Supreme Court do not declare a forfeiture unless the express language of a lease requires it or unless the conduct of the parties is such that a forfeiture is necessary to protect the rights of the lessor. It is also true that most of the cases in which leases have been declared forfeited have not involved producing wells.

In this case, the stipulated facts indicate that a forfeiture is not required by the agreement of the parties and is not necessary to protect the rights of the lessor. We note that the parties to this lease agreement struck the delay rental clause, which contained mandatory cancellation language, and inserted a minimum royalty clause with no comparable language. The lease does not by its terms require forfeiture for a failure to pay the minimum royalty. The action of the lessee in this case is neither flagrant nor reprehensible. The damage to the lessor is the failure to receive the minimum royalty due under the lease and is the result of inadvertent action by the lessee. This damage can be adequately compensated by an award of money damages. In this case, the cost to the lessee from a forfeiture would greatly exceed the damage suffered by the lessor and is not necessary to protect the rights of the lessor.

We hold that, under the facts shown, the cancellation of the lease in question was not warranted and is reversed. The remedy of damages is adequate, and the matter is remanded with instructions to the trial court to determine the damages due to the lessor to remedy the breach of the lease by the lessee.

In regard to the issue of damages, we hold that the amounts received by the lessor as an overriding royalty are not to be included in computing what has been received by her towards sat-

isfaction of the minimum royalty. The only royalty that can be considered in computing the minimum royalty due is the one-eighth royalty reserved to the landowner.

Reversed and remanded with instructions.