(105 P.3d 273)
Nos. 91,648
91,661

PATRICK N. BARKER, *Appellee/Cross-appellant*, v. GENE KRUCKENBERG, NEIL SCOTT, and KEITH NISWONGER, *Appellants/Cross-appellees*.

Opinion filed February 4, 2005.

*Rachael K. Pirner* and *Timothy E. McKee*, of Triplett, Woolf & Garretson, LLC, of Wichita, for appellants/cross-appellees.

*Robert R. Eisenhauer*, of Johnston & Eisenhauer, of Pratt, for appellee/cross-appellant.

Before MARQUARDT, P.J., MALONE and CAPLINGER, JJ.

MALONE, J.: Patrick N. Barker brought suit against Gene Kruckenberg and other individuals seeking termination of two oil and gas leases on Barker's property known as the Hirt lease and the

Barker lease. The district court found that the Hirt lease had been forfeited and terminated the lease. The district court refused to terminate the Barker lease. Kruckenberg appeals the district court's decision terminating the Hirt lease. Barker cross-appeals the district court's decision refusing to terminate the Barker lease.

*Factual and procedural background*

The parties stipulated to the underlying facts of the case.

Hirt Lease

The Hirt lease was entered into on July 18, 1991, by and between Hirt Farms as lessor (Barker's predecessor in title) and B & N Enterprise as lessee (Kruckenberg's predecessor in title). The lease covered the Northeast Quarter of Section 26, Township 27 South, Range 12 West, in Pratt County. The Hirt lease has one producing gas well, the Hirt # 1. The lease contains the following provision: "This lease will terminate if royalty is less than $5.00 per acre per annual year." Since the Hirt lease covers 160 acres, the minimum annual royalty to the lessor under the lease is $800. The lease does not provide a specific time by which the minimum royalty must be paid in order to avoid a forfeiture.

Barker and his wife acquired ownership of the real estate from Vernon Hirt on April 14, 1997. Neither party informed the oil and gas lessee in writing about the change in ownership, so royalty payments continued to be paid to Hirt Farms. According to the lease, "no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer or assignment . . . ." The royalty payments were not transferred to the Barkers until June 2002.

Although Barker did not initially receive royalty payments, the record reflects that he knew about production under the Hirt lease at the time he purchased the land. The title work disclosed that the real estate was subject to the Hirt lease. Barker was aware that Kruckenberg was on and around the property, and Barker noticed activity at the Hirt #1 well site. According to Barker, he had several conversations with Kruckenberg as to why he was not receiving

royalty payments. Kruckenberg informed Barker in those conversations that there was production under the lease.

The Hirt lease did not pay the minimum royalty between 1997 and 1999. Specifically, royalties were paid in the amount of $750.78 in 1997, $536.38 in 1998, and $650.07 in 1999. However, the $800 minimum royalty was exceeded for the years 2000, 2001, and 2002. Furthermore, in September 2001, B & N Enterprise paid $8,575.16 to several different contractors in order to increase production of Hirt #1.

Barker Lease

The Barker lease was entered into on March 27, 2001, by and between the Barkers as lessors and Kruckenberg as lessee. The lease covered the Southeast Quarter of Section 23, Township 27 South, Range 12 West in Pratt County. The Barker lease has one producing oil well, the Hirt 1-A.

The Barker lease contains the following provision: "If production is established, Lessor shall be paid a minimum royalty of $150.00 per month." The parties stipulated in district court that the Barkers did not receive a royalty payment of $150 each month under the lease. However, the parties also stipulated that the Barkers received a royalty of $3,917.55 under the lease over 2 years, which exceeds $1,800 per year.

Proceedings in district court

Barker filed a lawsuit on September 19, 2002, seeking to terminate both the Hirt lease and the Barker lease for failure to pay the minimum royalty. The case proceeded to a bench trial on stipulated evidence. The district court terminated the Hirt lease citing the express language of the contract that the lease "will terminate" if the royalty is less than $800 per year. The district court considered this an automatic termination, and it did not matter that it had been 3 years since the lease had failed to pay the minimum royalty. The district court refused to terminate the Barker lease even though it did not pay a royalty of $150 each month. The district court noted that the Barker lease did not contain a forfeiture provision in the event the minimum royalty was not paid. The

district court also relied on the fact that even though the lease did not pay a royalty of $150 each month, the annual royalty exceeded $1,800. The court noted that according to industry practice, a small-producing well does not pay royalties to the landowner each month.

## Issues and standard of review

Kruckenberg claims that the district court erred by terminating the Hirt lease. He argues that Barker did not promptly assert his forfeiture right and is barred from terminating the lease under the doctrine of waiver. Barker cross-appeals, claiming that the district court erred by refusing to terminate the Barker lease.

The standard of appellate review is de novo for cases decided by the district court based upon documents and stipulated facts. *In re Harris Testamentary Trust*, 275 Kan. 946, 951, 69 P.3d 1109 (2003). Where the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions, and stipulations, the appellate court has as good an opportunity to examine and consider the evidence as did the court below and to determine de novo what the facts establish. The appellate court's review of the conclusion of law is unlimited. *Heiman v. Parrish*, 262 Kan. 926, 927, 942 P.2d 631 (1997).

## Hirt lease

The Hirt lease contains an express forfeiture clause that the lease "will terminate" if the annual royalty to the lessor is less than $800. It is uncontroverted that the minimum royalties were not met in 1997, 1998, and 1999. Relying upon the express language of the forfeiture clause, the district court terminated the lease.

Kruckenberg argues that the case is controlled by *M & C Oil, Inc. v. Geffert*, 21 Kan. App. 2d 267, 897 P.2d 191, *rev. denied* 258 Kan. 858 (1995), which involved an oil and gas lessee's failure to pay minimum royalties. In *M & C Oil*, the court found that the lessee's failure to pay minimum royalties was not egregious; rather, the failure to pay was largely the result of inadvertence. Further, the time the royalty payments were due was not expressly stated in the lease. 21 Kan. App. 2d at 272. The court held that a remedy

in damages was adequate and forfeiture was not appropriate. 21 Kan. App. 2d at 274. Kruckenberg points out that while the case was pending in district court, Kruckenberg tendered a check to Barker in the amount of $462.77 in an effort to satisfy the minimum royalty from 1997 through 1999. Barker rejected the offer. Kruckenberg argues that this would have constituted a sufficient remedy for Barker.

*M & C Oil* can be distinguished because the lease in that case did not contain an express forfeiture clause such as the one in the Hirt lease. Although the law abhors forfeitures, the plain letter of an agreement providing for a forfeiture is not to be disregarded. Generally, forfeitures will be enforced if the language in the instrument is plain and unequivocal. *Citizens B. & L. Ass'n v. Jones*, 149 Kan. 302, 305, 87 P.2d 633 (1939).

Barker cites *Thurner v. Kaufman*, 237 Kan. 184, 193-94, 699 P.2d 435 (1985), where the Kansas Supreme Court granted the forfeiture of an oil and gas lease based on the lessee's breach of the lease *even in the absence of an express forfeiture clause*. In *Thurner*, the lessee breached the lease by leaving open pits on the lessors' premises for storage of saltwater and oil, exposing livestock to danger. The court found the lessee's breach of the lease was flagrant and reprehensible. 237 Kan. at 191-92. The court held that despite the fact that equity abhors a forfeiture, a court may cancel an oil and gas lease when damages are impracticable and to prevent injustice even in the absence of an express forfeiture clause. 237 Kan. 184, Syl. ¶ 1.

*Thurner* is not particularly helpful to Barker's case. *Thurner* does not involve a breach of an oil and gas lease based upon failure to pay the minimum royalty. Furthermore, Kruckenberg has not committed any flagrant and reprehensible conduct of the nature the lessee committed in *Thurner*.

Although not cited by Barker, a case more on point is *Rice v. Hillenburg*, 13 Kan. App. 2d 155, 159, 766 P.2d 182, *rev. denied* 244 Kan. 738 (1988), where the court held that an oil and gas lease expired by its own terms when the lessee failed to pay the delay rental when it was due. In *Rice*, the lease provided that it would " 'terminate as to both parties, *unless* the lessee shall *on or before*

*said date* pay or tender to the lessor' " a specified delay rental. (Emphasis added.) 13 Kan. App. 2d at 156. The lessee did not drill or pay the rental by the due date because the lessee had been sued by another company who claimed the right to lease all of the minerals under the property. The litigation ended in favor of the lessee. However, shortly after the delay rental was due, and while the lessee's litigation over the mineral rights was still pending, the lessors filed an affidavit of nonpayment of delay rental and executed a new oil and gas lease with the other company. The lessors ultimately filed suit seeking to terminate the first lease. The district court granted the lessee summary judgment, noting the lessee's expenditure of over $6,000 in defending the lease in the prior litigation, the lessors' awareness of the litigation, and equitable considerations.

The Court of Appeals reversed, relying primarily upon the difference between an "unless" oil and gas lease and an "or" oil and gas lease. The court stated that the main difference between the two types of leases is that "the lessee's nonpayment of a delay rental under an 'or' lease violates a covenant and allows lessor to cancel the lease while nonpayment under an 'unless' lease automatically terminates the lease. [Citation omitted.]" 13 Kan. App. 2d at 162. The court determined that since the case involved an "unless" oil and gas lease, the lease terminated automatically upon the lessee's failure to pay the delay rent. The court recognized the harshness of the rule but indicated there was no room for equitable considerations. 13 Kan. App. 2d at 159.

*Rice* supports Barker's argument that an oil and gas lease forfeiture clause may be enforced if the language is plain and unambiguous. However, *Rice* can be distinguished because the present case involves failure to pay a minimum royalty from a producing lease as opposed to failure to pay rent under an "unless" delay rental clause. Furthermore, the lease in *Rice* contained a specific date when the delay rental was due. The Hirt lease does not provide a specific time by which the minimum royalty must be paid in order to avoid a forfeiture. Most importantly, *Rice* does not involve a situation as we have in this case where the landowner waited 3 years to attempt to enforce a forfeiture.

Although the Hirt lease contains an express forfeiture clause for nonpayment of the minimum royalty, Kruckenberg argues that equity should excuse the breach of the lease. Specifically, Kruckenberg argues that Barker is barred from terminating the lease by not promptly asserting his right of forfeiture.

"Forfeitures must be promptly asserted. If not asserted they are waived. [Citation omitted.] The tendency has long been to frown on forfeitures where the rights of the parties insisting thereon can otherwise be adequately protected. [Citation omitted.]" *Cowman v. Phillips Petroleum Co.*, 142 Kan. 762, 766, 51 P.2d 988 (1935). See also *Templing v. Bennett*, 156 Kan. 68, 72, 131 P.2d 904 (1942) (noting a familiar rule of equity involving the right of forfeiture of mineral rights is that the forfeiture must be promptly asserted or deemed waived).

In *Bloom v. Rugh*, 98 Kan. 589, Syl. ¶ 2, 160 Pac. 1135 (1916), the Kansas Supreme Court held that a right of forfeiture on an oil and gas lease must be promptly asserted, or it will be deemed waived. *Bloom* involved an oil and gas lease delay rental clause that stated:

" 'Second party agrees to commence well on the above described premises within 90 days from the date hereof, and in case of failure to do so this lease shall become null and void and without any further effect whatever, unless the Lessee shall pay for the delay at the rate of One Dollar per acre per annum thereafter until a well shall be commenced.' " 98 Kan. at 590.

No well was started within the time agreed, but the lessor failed to assert the right of forfeiture for nearly 3 months, at which time the lessor entered into a second lease with another party. The second lessee sought to enforce the lease. The court held that the lessor's failure to assert the right of forfeiture promptly and unequivocally on the first default waived that right. 98 Kan. 589, Syl. ¶ 2. The court also found that the first lease was uncertain as to the time when rent should be paid if the well was not commenced in 90 days and that payment within any reasonable time would be sufficient to avoid forfeiture. 98 Kan. at 594.

The Hirt lease is similar to the lease in *Bloom* because the Hirt lease does not provide a specific time by which the minimum royalty must be paid in order to avoid a forfeiture. Interestingly, the

lease in *Bloom* involved an "unless" delay rental clause almost identical to the clause considered by the Court of Appeals in *Rice*. Nevertheless, the Supreme Court in *Bloom* refused to enforce the express lease provision on the ground that the lessor failed to promptly assert the right of forfeiture. 98 Kan. 598, Syl. ¶ 2.

Here, Barker knew about production under the Hirt lease when he purchased the real estate in 1997, and he surmised at that time that he was not properly receiving the royalty. The lessee failed to pay the minimum royalty under the Hirt lease from 1997 through 1999. However, the minimum royalty was exceeded for the years 2000 through 2002. Furthermore, the lessee invested an additional $8,575.16 in September 2001 in order to successfully increase production of the gas well. If the lease is terminated, Barker will receive a windfall from the investment to improve the well.

We conclude it would be inequitable to allow Barker to terminate the Hirt lease in 2002 based upon the lessee's failure to pay the minimum royalty 3 years earlier, especially since the lessee made an additional investment in the well during the interim. Barker failed to promptly assert his right of forfeiture and, accordingly, he waived his right to terminate the Hirt lease. Also, forfeiture of an oil and gas lease is only appropriate when damages are impracticable. Here, money damages would provide a sufficient remedy for Barker and would adequately protect his interest in the Hirt lease.

### Barker lease

Barker cross-appealed claiming that the district court erred in refusing to terminate the Barker oil and gas lease. The Barker lease provides that the "[l]essor shall be paid a minimum royalty of $150.00 per month." The evidence was uncontroverted that the royalties were not paid monthly. However, the parties stipulated that the Barkers received a royalty under the lease over 2 years exceeding $1,800 per year. Nevertheless, Barker claims that the lease should be terminated for failure to pay a minimum royalty of $150 each month.

Unlike the Hirt lease, the Barker lease does not contain an express forfeiture clause in the event that the minimum royalty is not

paid. The district court relied primarily upon this distinction in not terminating the Barker lease. As the district court noted, the Barker lease is more analogous to the situation in *M & C Oil*, where the lessee's failure to pay minimum royalties did not cause the court to terminate the lease. The *M & C Oil* court noted that Kansas case law does not support a forfeiture "unless the conduct of the parties is such that a forfeiture is necessary to protect the rights of the lessor." 21 Kan. App. 2d at 274. Clearly forfeiture was unnecessary to protect Barker's rights under this lease when the evidence showed that Barker received royalties exceeding $150 per month on average.

Also, the district court correctly explained that practicality dictates a flexible payment schedule. The district court noted that a modest well does not produce enough oil to be sold on a monthly basis. With this in mind and in the absence of a clause dictating a payment schedule, the lease should not be forfeited for failure to pay the royalties on a monthly basis. The district court did not err in refusing to terminate the Barker oil and gas lease.

The judgment of the district court on the appeal involving the Hirt lease is reversed. The judgment of the district court on the cross-appeal involving the Barker lease is affirmed.